**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Chianne D., et al.,

       Plaintiffs,

v.                               Case No. 3:23-cv-00985

Jason Weida, in his official capacity
as Secretary for the Florida Agency
for Health Care Administration, et al.,

       Defendants.

_____/

**PLAINTIFFS' AMENDED MOTION FOR AND**
**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

    **PLEASE TAKE NOTICE** upon all the papers filed herein,[1] Plaintiffs move the

Court for an order granting Plaintiffs' motion pursuant to Federal Rule of Civil

Procedure 23 on behalf of a statewide class and two subclasses defined as:

> All Florida Medicaid enrollees who are members of either of the two subclasses listed below and who, on or after March 31, 2023, have been or will be found ineligible for Medicaid coverage.

> **Subclass A**: Individuals issued a written notice that includes no reason code or only uses reason code(s) that do not identify the eligibility factor(s) Defendants relied on to determine the individual is ineligible for Medicaid. For purposes of this definition, eligibility factors are age, residency, income, assets or other non-cash resources, receipt of Social Security Administration benefits, Medicare enrollment, citizenship, immigration status, or Social Security Number, disability status, pregnancy, and incarceration status.

---

[1] Plaintiffs refer to evidence previously filed on the docket by ECF number. Additional evidence relied upon in support of this motion is cited to as labeled in the attached Appendix, filed as Exhibit 1 hereto.

**Subclass B:** Individuals issued a written notice that relies on a reason code that states the individual or household is over income for Medicaid eligibility but does not identify the household income used in the eligibility determination or the applicable income standard.

Undersigned counsel also move the Court for appointment as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiffs have filed "a paradigmatic Rule 23(b)(2) case" in which "meaningful, valuable injunctive relief . . . is indivisible, benefitting all members of the (b)(2) Class at once." *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015) (cleaned up). The case challenges the standardized notices that Defendants use to inform people that they are losing Medicaid coverage. Among other things, the notices do not provide a clear statement explaining the intended action or the legal or factual basis for the action. For example, the notices do not clearly state which household members are losing Medicaid coverage. They include no individualized information about the enrollees who are losing coverage. They include contradictory statements about coverage and rely on standardized "reason codes" that communicate only an ultimate conclusion.

With the end of pandemic-related Medicaid continuous coverage, Defendants are redetermining Medicaid eligibility and using the challenged notices to inform hundreds of thousands of people that they have lost Medicaid coverage. Medicaid enrollees, including the named Plaintiffs, have been unable to understand whether and

2

why their coverage is ending, thus preventing them from successfully appealing Defendants' decision and/or maintaining their benefits pending that appeal. Plaintiffs allege these notices violate the Due Process Clause of Constitution and the Medicaid Act's "fair hearing" requirements.

Class certification is appropriate: Florida Medicaid enrollees have identical constitutional and statutory rights to adequate notice, and the standardized notices issued to class members share the same flaws and omissions. Given the standard course of Defendants' conduct and its significant statewide impact, Plaintiffs have moved the Court for an order certifying this case as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

## BACKGROUND

In general, an individual's Medicaid eligibility is redetermined every twelve months. *See* 42 U.S.C. § 1396a(a)(10); 42 C.F.R. § 435.916(a)(1), (b), (d). However, during the COVID-19 pandemic, in exchange for enhanced federal funding, states were prohibited from terminating Medicaid coverage for almost all enrolled individuals. *See* 42 U.S.C. § 1396d note (Families First Coronavirus Response Act, Pub. L. No. 116-127, § 6008, 134 Stat. 178, 208-209). To obtain the enhanced funding, the Agency for Health Care Administration (AHCA) and the Department of Children & Families (DCF) implemented processes in March of 2020 to maintain enrollees' eligibility. After Congress announced the end of the continuous coverage requirement, Defendants began making Medicaid eligibility determinations in February 2023 and

began terminating individuals effective April 1, 2023.

To determine whether a person is eligible, Defendants are measuring their application for benefits against dozens of eligibility requirements. Of importance here, the individual must fit within a specific population group, such as low-income children; parents and other caretaker relatives; pregnant women; the elderly, blind, or disabled; or individuals under age 26 who were in foster care until age 18. Each of these population groups has different eligibility factors, such as age requirements, income limits, immigration status or citizenship, etc. Some eligibility categories have asset limits. Others do not. Some require individuals to have a disability or receive Social Security Administration or Medicare benefits. Others do not.

As was the case before the pandemic, if Defendants decide that the person is no longer eligible for Medicaid, DCF sends a written notice of action to the entire household using a DCF-designed standardized template. *See* DCF template notice of Medicaid ineligibility (ECF 2-2). The notices can include sections labeled "Medicaid" and/or "Medically Needy." Underneath each section is a list of household members with the word "eligible," "enrolled," or "ineligible" next to each name. If some individuals are listed as "eligible" or "enrolled" and others are listed as "ineligible," there is no reason given for the disparate decisions. *See* DCF template Medically Needy notice (ECF 2-3).

If all members in the section are listed as "ineligible," the template notice incorporates one or more reason codes. The reason codes appear after the word "Reason:". These codes are typically a single phrase pulled from a finite list of options.

*See* DCF reason codes list (ECF 2-4). Several reason codes do not identify any eligibility factor that Defendants used to terminate the person's Medicaid coverage, for example:

- "YOUR MEDICAID FOR THIS PERIOD IS ENDING"

- "NO HOUSEHOLD MEMBERS ARE ELIGIBLE FOR THIS PROGRAM"

- "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM"

- "YOU OR A MEMBER(S) OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR MEDICAID UNDER A DIFFERENT MEDICAID COVERAGE GROUP"

*Id*. Other reason codes do identify income as a relevant eligibility factor. *Id.* For instance, when communicating that an individual's income is too high to qualify for Medicaid coverage, Defendants use Reason Code 241, stating: "YOUR HOUSEHOLD'S INCOME IS TOO HIGH TO QUALIFY FOR THIS PROGRAM." *Id.* at Reason Code 242 (same); *id.* at Reason Code 482 (same); *id.* at Reason Code 502 (same); *see also* Reason Code 253 ("YOUR INCOME IS TOO HIGH TO QUALIFY FOR THIS PROGRAM"); *id.* at Reason Code 522 (same).

The template notice contains no placeholders for individualized information, and none is provided. As a result, Defendants' notices uniformly omit the factual information that served as the basis for Defendants' decision, which can vary widely among the eligibility factors outlined above (*e.g.*, income, age, household size, pregnancy, disability status). There are likewise no placeholders in the notices for the applicable eligibility standards, such as the income limit against which Defendants

5

measured the household's income. Nor is there any place where Defendants explain which population group(s) an individual was evaluated under, even though some populations—like the postpartum and newborn groups—have special rules entitling them to continuous eligibility despite any fluctuations in income. *See* Am. Compl. ¶¶ 41-42 (describing continuous coverage rules).

Furthermore, all of DCF's notices include the following language regarding how to request a fair hearing: "If you want a hearing, you must ask for the hearing by writing, calling the call center or coming into an office within 90 days from the date at the top of this notice." ECF 2-2 at 4; ECF 2-3 at 5. This language omits information regarding how to obtain a hearing including an address to deliver a written request, a phone number to call the "call center," a physical address for any DCF office, or any mention of the availability of requesting online or through email.

Each named Plaintiff received one of these standardized notices indicating they were losing Medicaid coverage. Each notice included reason codes that omitted any explanation about the factual basis for Defendants' decision. The reason codes offered in the May 16, 2023 notice to explain why Plaintiff A.V.'s coverage was ending were "YOU OR A MEMBER(S) OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR MEDICAID UNDER A DIFFERENT MEDICAID COVERAGE GROUP" and "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM." Jennifer V. Decl., Ex. A at 5-6 (ECF 2-5 at 11-12). After Plaintiff A.V. and her family applied for Medicaid again in December of 2023, DCF sent the family a notice that stated "Reason: Your child(ren) are not eligible for

6

Medicaid due to your family's income, but they may be able to get health insurance through Florida KidCare. . . ." *See* Ex. 2, 1/18/24 A.V. Notice at 4.

Similarly, Defendants included two reason codes in the 12-page notice to Plaintiffs Chianne D. and C.D.: "YOUR HOUSEHOLD'S INCOME IS TOO HIGH TO QUALIFY FOR THIS PROGRAM," and "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM." Chianne D. Decl., Ex. B. at 2, 4, 6, 8 (ECF 2-6 at 19, 21, 23, 25). Defendants used this later reason code in Kimber Taylor's notice, along with the code, "YOU OR A MEMBER(S) OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR MEDICAID UNDER A DIFFERENT MEDICAID COVERAGE GROUP. Taylor Notice at 4-5 (ECF 2-7).

Each family did not understand what the notice meant, was confused, and unable to mount a pre-termination appeal. As a result, the families lost time trying to understand the action and, ultimately, lost Medicaid coverage and, with it, critical health care services. Some incurred medical debts. *See generally* Chianne D. Decl. (ECF 2-6), Jennifer V. Decl. (ECF 2-5); Taylor Decl. (ECF 3-12); Ex. 3, 2nd Taylor Decl. The named Plaintiffs are among the hundreds of thousands of enrollees who have lost coverage following receipt of a DCF notice using flawed reason codes. *See* Decl. of Daniel Davis, ¶¶ 3-4 (ECF 76-1).

## ARGUMENT

### I.     The Class Representatives Have Standing to Bring these Claims.

Prior to the Rule 23 class certification analysis, the court must determine that at

least one named class representative has Article III standing to bring each class claim. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). Plaintiffs must establish three elements: (1) "injury-in-fact" that is concrete and particularized, (2) a "causal connection" between the injury-in-fact and the conduct complained of, and (3) that a favorable decision by a court will redress the injury. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (internal citations omitted); *see also Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016) (discussing the need for concrete and particularized injury when procedural rights are violated), *on remand*, 867 F.3d 1108, 1117 (9th Cir. 2017) (finding standing where plaintiff alleged inaccuracies beyond "mere technical violations . . . too insignificant to present a sincere risk of harm to the real-world interests that Congress chose to protect"), *cert. denied*, 138 S. Ct. 931 (2018). As shown below, the class representatives meet the Article III standing test.

### A.     Plaintiff A.V.

Plaintiff A.V. received Medicaid coverage for her medical care since her birth in May 2022. *See* Jennifer V. Decl. ¶¶ 4-5 (ECF 2-5). A.V.'s mother, Jennifer V., received a notice, dated May 16, 2023, intended to notify her that A.V.'s coverage was ending. *Id.* ¶¶ 7-8. The only reason codes appearing under A.V.'s name stated: "YOU OR A MEMBER OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR MEDICAID UNDER A DIFFERENT MEDICAID COVERAGE GROUP" and "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM." *Id.* Ex. A at 5-6 (ECF 2-5 at 11-12). Jennifer did not

understand the notice to mean A.V. had been terminated from Medicaid. *Id.* ¶ 11. As a result, Jennifer V. was unable to determine whether an appeal was needed.

A.V. remained without coverage for several months. During that time, her parents skipped her 15-month well-child visit, declined screenings for vision, lead, and anemia, and incurred over $250 in medical bills. Ex. 4, A.V. Resp. to D's Interrogatories, No. 7. Her parents applied again for health coverage through the Federally Facilitated Marketplace on December 15, 2023. *Id.* at Int. No. 8. Application. When that application was transferred, DCF denied it on January 18, 2024. In a section listing A.V. and two other children, this new notice stated "Your child(ren) are not eligible for Medicaid due to your family¿s [sic] income, but they may be able to get health insurance through Florida KidCare. . . . To learn how you can enroll them, please call 1-800-821-5437. Make this call soon since their Medicaid is ending." Ex. 2, 1/18/24 A.V. Notice at 4. Once again, the notice confused and frustrated A.V.'s parents. The reference to "Your child(ren)" was unclear, since the notice referred to multiple children. Ex. 4, Int. Resp. No. 8. The notice also said Medicaid "is ending," but A.V. was not enrolled in Medicaid at the time. *Id.* A.V.'s parents could not determine how DCF calculated the family's income and did not know if those calculations were right or wrong. *Id.*

DCF was wrong (just as it was wrong in May of 2023): A.V. is income-eligible for Medicaid in the category for children ages 1-5. *See* Ex. 4, Int. Resp. No. 1. It was not until DCF responded to written discovery in this case regarding the family's household size that DCF's error could be corrected through the intervention of

counsel, ultimately restoring A.V.'s coverage on February 2, 2024. Ex. 6, Email exchange; Ex. 7, Defs' Response to Pls' RFA. Furthermore, A.V. will face redetermination of her Medicaid eligibility and her family the confusion, stress, and anxiety that accompanies Defendants' notice of decision when A.V.'s continuous coverage ends next year. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 211–12 (1995) (plaintiff who was likely to suffer injury within one-year period had standing). A.V. has standing to represent Subclasses A and B.

### B.    Plaintiffs Chianne D. and C.D.

Chianne D. had Medicaid coverage for herself and her two children—S.D., an infant, and C.D., who is two-years-old and diagnosed with cystic fibrosis. *See* Chianne Decl. ¶¶ 2-5 (ECF 2-6). On March 20, 2023, DCF sent a Notice of Eligibility Review to Chianne informing her that she needed to renew her Medicaid eligibility. Ex. 8, 3/20/23 DCF Notice of Eligibility Review. A day later, she filed for renewal. Ex. 9, 3/21/23 ACCESS Application. On April 4, DCF asked Chianne to submit additional information, which she promptly did a week later. Ex. 10, 4/4/23 DCF Request for Information; Ex. 11, 4/11/2023 Self-Attestation of Loss of Income.

Chianne received a notice, dated April 24, 2023, from DCF that provided conflicting information about the family's Medicaid eligibility. *See* Ex. 1, Chianne Decl. at Ex. B (ECF 2-6 at 18). The notice contained reason codes that stated both "YOUR HOUSEHOLD'S INCOME IS TOO HIGH TO QUALIFY FOR THIS PROGRAM" and "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE

FROM ANOTHER PROGRAM." *Id.* Chianne did not understand the action being taken, the reasons for it, or what she could do about it. *Id.* ¶¶ 10, 12-16, 18. For example, she did not understand from the notice that she could preserve uninterrupted coverage—either by requesting a pre-termination hearing or, for C.D., by taking steps to ensure a smooth transition into CHIP coverage. *Id.* ¶¶ 18-19. Had she known she could request a hearing online or via email to preserve coverage during an appeal, she would have taken action immediately. 2nd Chianne Decl. ¶¶ 8-9 (ECF 47-2).

Chianne spent time working to understand the notice and whether a mistake had been made. Calls to the DCF call center in late May—when a request for appeal could have included continuation of Medicaid benefits—contributed to Chianne's confusion and delayed her ability to decide next steps. *See* Ex. 12, 5/30/2023 AM Call Transcript; Decl. of William Roberts, Exs. D-1, D-2 (ECF 38-1). Critically, in Chianne's first call to DCF on the morning of May 30th,[2] the DCF case worker told Chianne "yours and CD's are good, which are medically needy. You both have Medicaid until May of 2024," that "Yes, the Medicaid has been extended" and further assured that "I'm actually going to transfer this call over so that we can get the Medicaid system updated as well . . . and the benefits will continue." Ex. 12, 5/30/2023 AM Call at 3:20-24, 6:21-22, 7:15-16; *see also* Roberts Decl., Ex. D-2 at 3:8-10 (ECF 38-1 at 30) (Chianne noted on a subsequent call that "when I talk to other agents, they're like, 'No. In our system, it shows you're still active until 2024.'").

---

[2] The transcript of this first call was first produced to Plaintiffs on January 30, 2024 so it was not included in the parties' prior briefing. *See generally* Roberts Decl. (ECF 38-1).

Chianne persisted in seeking additional information about DCF's decision. However, call center agents parroted generic language from the notices that her income was "too high." ECF 38-1 at 24, 34, 38. When Chianne asked for the income standard, the agent said they were "not qualified to answer that question." *Id.* 38. No one ever mentioned DCF denied Chianne postpartum coverage or explained why. *See generally* Ex. 12, 5/30/2023 AM Call; Roberts Decl., Ex. D (ECF 38-1). Eventually—after her coverage had already ended—a DCF agent did submit a fair hearing request. *See* Roberts Decl., Ex. D-3 at 20-26 (ECF 38-1 at 62-68). But the delay, caused by the confusion of the notice, and exacerbated by her calls to DCF, meant the appeal was filed too late to preserve Medicaid coverage pending the appeal.

Chianne spent the month of June juggling numerous responsibilities to care for C.D., who could not attend medical daycare due to the loss of Medicaid coverage. C.D. also had to visit the emergency room because of a persistent cough and, as a result, Chianne incurred medical debts, which continue to impact the family. 2nd Chianne Decl. ¶ 2 (ECF 47-2); Chianne Decl. ¶¶ 20-24, 32 (ECF 2-6). Once she was able to confirm C.D.'s CHIP coverage would begin in July, Chianne withdrew the Medicaid appeal because, at that point, she did not believe a hearing could offer relief. Chianne 2nd Decl. ¶ 11 (ECF 2-6).

Chianne D. and C.D. have standing to represent Subclass B. Proper notice would have enabled Chianne to challenge her own erroneous loss of overage and to determine whether C.D. was eligible for Medicaid or CHIP and take steps to preserve uninterrupted coverage—either by requesting a pre-termination hearing or, for C.D.,

by ensuring a smooth transition to CHIP. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (notice must enable enrollee to "choose for himself whether to appear or default, acquiesce or contest."). Although Chianne's coverage was restored after this lawsuit was filed, she faces another redetermination at the end of this month, when her 12-month postpartum period ends. 2nd Chianne Decl. ¶ 17 (ECF 47-2). Meanwhile, the family is paying $248 a month for C.D.'s CHIP coverage. C.D. remains without Medicaid coverage, though under Eleventh Circuit precedent, her "entitlement to aid" was not affected, because DCF "did not terminate [her coverage] in accordance with federal notice requirements." *Turner v. Ledbetter* 906 F.2d 606, 609 (11th Cir. 1990); *see 31 Foster Child.*, 329 F.3d at 1267 (finding standing when plaintiff "has been denied an alleged entitlement, and . . . is asking for procedural protections [s]he claims have not been provided").

## C.   Plaintiffs Kimber Taylor and K.H.

Kimber Taylor began receiving Medicaid after learning she was pregnant in October 2022. *See* Taylor Decl. ¶ 2 (ECF 3-12). Kimber received a notice from DCF, dated April 26, 2023, stating she was eligible for continued Medicaid and coverage of her baby would begin at birth. *Id.* ¶ 7. K.H. was born in May. *Id.* ¶ 3. On June 8, 2023, Kimber received another notice from DCF, this one informing her that her and K.H.'s Medicaid coverage would end at the end of the month. The notice said K.H. was enrolled in Medically Needy but also said Kimber and K.H. would lose coverage at the end of the month. The reason code stated, "YOU OR A MEMBER(S) OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR MEDICAID UNDER A DIFFERENT

MEDICAID COVERAGE GROUP." *Id.* ¶¶ 9-11.

Ms. Taylor did not understand what had happened in the 40 intervening days to cause ineligibility, but both she and her newborn were uninsured. The notice did not provide a clear statement of what had changed. *Id.* ¶ 12. Anxious, panicked, frustrated, and confused, Kimber called DCF to get more information. The notice did not explain, and she was not told, about continuous coverage for postpartum women and young children. Kimber believed DCF when the agent insisted Kimber was over income. She was discouraged from requesting a hearing because the notice said, "You will be responsible to repay any benefits if the hearing decision is not in your favor." *Id.* ¶¶ 13-17; see Tr. 127:16-22 (Defendants' counsel acknowledging Kimber did not pursue hearing because of recoupment language).

As a result of Defendant's insufficient notice, Kimber lost her right to continue receiving Medicaid benefits pending appeal. On August 7, 2023, she received another notice, which, at the time, she understood to mean DCF found K.H. and her eligible for coverage. She, therefore, did not appeal. Taylor Decl. ¶ 20 (ECF 3-12); Ex. 3, 2nd Taylor Decl. ¶ **XX**. However, Kimber now believes her own coverage was not restored: Kimber is pregnant again and incurred a bill from her OB/GYN for pregnancy care received in January 2024. Ex. 3, 2nd Taylor Decl. ¶ XX. The August 7 notice is adding to her confusion: while stating on one page that Kimber is eligible, a later page says she is ineligible because "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM." Ex. 5, 8/7/23 Taylor Notice; Ex. 3, 2nd Taylor Decl. ¶ 2. It is too late to appeal either the June or August

14

notices, but Kimber has submitted yet another Medicaid application to try to restore her Medicaid coverage. *Id*. ¶ 3. In sum, the Defendant's June 2023 notice of termination has triggered a cascade of coverage loss, an unpaid medical bill, a persistent lack of understanding about the status of her family's coverage, and ongoing anxiety and frustration over the status of the family's Medicaid coverage. *See Spokeo*, 867 F.3d at 1117 (recognizing as concrete injuries the "intangible harms" or "anxiety, stress, concern, and/or worry"); *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022) ("[A] plaintiff's wasted time, in particular, can be a concrete injury for standing purposes"). Kimber and K.H. have standing to represent Subclass A.

## II.    The Proposed Classes Meets the Requirements of Rule 23.

Class certification is appropriate when (1) the threshold requirements of Rule 23(a) are satisfied, and (2) one of the three requirements under Rule 23(b) has been met. "The Supreme Court has made clear that district courts must grant class certification in 'each and every case' where the conditions of Rule 23(a) and (b) are met." *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021) (quoting S*hady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–400 (2010)).

### A.    The proposed classes meet the requirements of Rule 23(a).

To achieve class certification, Rule 23(a) requires that

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

15

*Valley Drug Co. v. Geneva Pharm.*, Inc., 350 F.3d 1181, 1187-88 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(1)–(4). Plaintiffs' satisfy these criteria.

### 1. Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all of its members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is "generally [a] low hurdle." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). "[T]he general rule of thumb . . . is that 'less than twenty-one is inadequate, more than forty adequate.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted).

Defendants' own data shows the class is sufficiently numerous. According to DCF employee Daniel Davis, as of December 2023, "771,043 enrollees received a Notice of Case Action that used only one or more of the following three reason codes: 227, 249, 520," that are among those being challenged in Subclass A.[3] Davis Decl. ¶ 4 (ECF 76-1). "Of these 771,043 enrollees, 284,779 remained without full Medicaid coverage in December 2023." *Id*. Regarding Subclass B, Mr. Davis stated that 102,080 enrollees received a notice with a reason code that contained at least one of the income-related reason codes. *Id.* ¶ 3; *See also* ECF 47-3 (identifying in green highlighting the income-related reason codes). Of course, as redeterminations continue, the number of

---

[3] Subclass A encompasses *all* reason codes that fail to specify which eligibility factor renders an individual ineligible (*i.e.,* that fails to specify income, age, disability status etc.). In ECF 47-3, Plaintiffs identified in yellow highlighting the existing reason codes that fall within Subclass A. Because Subclass A includes more reason codes than those in Mr. Davis's declaration, Subclass A is likely larger.

class members grows.

Other critical indicators for numerosity are also present. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla. 1996) (identifying, *e.g.,* geographic diversity and ability of class to pursue individual suits). Plaintiffs seek prospective injunctive relief that will benefit future Medicaid enrollees. *See Hill v. Butterworth*, 170 F.R.D. 509, 514 (N.D. Fla. 1997). Defendants' policy affects enrollees statewide. *Walco Invs., Inc.*, 168 F.R.D. at 324. Medicaid enrolled class members are, by definition, financially limited in their ability to retain legal representation. *Id.* In sum, joinder of all putative class members is impracticable, and Rule 23(a)(1) is met.

## 2. Commonality

Commonality ensures all class members have similar claims. *See Meza by & through Hernandez v. Marstiller,* No. 3:22-CV-783-MMH-LLL, 2023 WL 2648180, *9 (M.D. Fla. Mar. 27, 2023). Thus, class members need to have suffered the same injury, and "their claims must depend upon a common contention . . . that it is capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 353 (2001).

Rule 23(a)(2) "does not require that all the questions of law and fact raised by the dispute be common, or that the common questions of law or fact 'predominate' over individual issues." *Vega*, 564 F.3d at 1268. "The requirement is satisfied 'where plaintiffs allege common or standard conduct by the defendant directed toward

members of the proposed class.'" *Meza*, 2023 WL 2648180, *9 (quote omitted). Indeed, actions "combining challenges to uniform practices with requests for declaratory, or injunctive relief, by their very nature deal with common questions of law and fact." *Hernandez v. Meadows*, 209 F.R.D. 665, 671 (S.D. Fla. 2002) (citation omitted). Finally, one common question of law or fact is enough to clear the "low hurdle of Rule 23(a)(2)." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).

Here, Plaintiffs allege a standardized course of conduct by Defendants—the use of standardized termination notices that do not provide the clear statement of the factual and legal basis for the action that is required before Medicaid coverage can be terminated. Critically, the notices are the *only* communication DCF affirmatively provides to all enrollees to communicate its final eligibility decision. And those notices share several common features: All of the challenged notices omit both the facts DCF relied upon and the description of the standard used to measure eligibility. The Plaintiffs also challenge the standard fair hearing paragraph in each of their notices. Thus each class member suffered the same *injury*: receipt of an inadequate notice.

The central common question of law for the due process claim is whether DCF's choice to omit any individualized information or description of applicable standards of eligibility, in the sole communication it affirmatively provides regarding its eligibility decisions, is "reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 315. Because the relevant standard is an objective test that evaluates "whether the notice is reasonably calculated to apprise intended recipients,

18

*as a whole*, of their rights," this claim is susceptible to class-wide proof. *Jordan v. Benefits Rev. Bd. of U.S. Dep't of Lab*, 876 F.2d 1455, 1459 (11th Cir. 1989) (emphasis added). Similarly, for the Medicaid Act claim, the question is whether absent factual information or eligibility standards, the notices satisfy Medicaid's "fair hearing" requirement to provide "a clear statement of the specific reasons supporting the action." 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.210(b).

Subclass A shares the additional common question of whether the failure to identify *any* eligibility factor(s) used to reach a decision about an individual's Medicaid ineligibility—either because the notice includes no reason code at all or because it includes codes that are empty of explanation—can satisfy Defendants' obligation to provide notice "detailing the reasons for a proposed action." *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). And for Subclass B, there is also a shared question whether a notice that only states someone's income is "too high" without identifying the household income or applicable income standards comports with due process or the Medicaid Act. *See Ortiz v. Eichler*, 616 F. Supp. 1046, 1061 (D. Del. 1985), *aff'd*, 794 F.2d 889 (3d Cir. 1986); 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.210(b).

While these questions of fact and law meet the test for commonality, there are other common questions as well. For example, when evaluating whether additional process is constitutionally required, courts consider the administrative burden to the state from the additional procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 347 (1976). Determining what administrative burden Defendants would face from adding additional explanation to the notices will advance each class members' due process

claim and is readily susceptible to class-wide proof. Likewise, class members' common claims will be advanced by determining whether the notices' description of how to obtain a fair hearing accurately reflects Defendants' policies. Answers to these questions are relevant to each class members' claim that the notices do not "clearly" explain "the availability of an avenue of redress," *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13-14 n.15 (1978), and do not inform enrollees of the "method by which [they] may obtain a hearing." 42 C.F.R. § 431.206(b)(2). Finally, the injunctive relief sought here confirms that the answer to the above questions will resolve Plaintiffs' claims in one stroke. If the Court finds for Plaintiffs', relief would include requiring Defendants to stop terminating Medicaid coverage of class members until they can generate and provide adequate notices to class members. If the Court rules for Defendants, then they can continue to rely on the notices as currently drafted.

Notably, numerous courts have found the commonality requirement met in similar cases. *See, e.g.*, *J.M. ex rel. Lewis v. Crittenden*, 337 F.R.D. 434, 449 (N.D. Ga. 2019) (certifying class raising common question of "whether Defendants' 'Notice of Medicaid Status' letters violate 42 U.S.C. § 1396a(a)(3) of the Medicaid Act and its implementing regulations"); *Hernandez*, 209 F.R.D. at 671 (finding the "overriding common issue of law and fact"—whether the Defendant violated the Medicaid Act and regulations, and the Due Process Clause by failing to ensure adequate notice and fair hearing rights on a uniform basis—was sufficient to meet the commonality requirement); *Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1308368, *5 (N.D. Ga. Mar. 23, 2015) (approving settlement in case challenging inadequate notice

20

of denials and noting that courts "throughout the country routinely certify classes of public benefits applicants in similar cases seeking to challenge a policy, custom, or practice in the administration of . . . benefit programs").

### 3. Typicality

The typicality requirement is satisfied when the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts have found that "the commonality and typicality requirements of Rule 23(a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman, ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). "Class members' claims need not be identical . . . rather, there need only exist a sufficient nexus . . . between the legal claims of the named class representatives and" the remainder of the class. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quotations omitted). A sufficient nexus "exists if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Id.* (cites omitted). "The typicality requirement is generally met if the class representative and class members received the same unlawful conduct irrespective of whether the fact patterns that underlie each claim vary." *Meza*, 2023 WL 2648180, *10 (cite omitted).

Here, Plaintiffs' claims are typical of the class. They "possess the same interest" in receiving an adequate notice that contains a clear statement of the intended action and the reason for the action, and they suffer the same injury, namely receipt of an

21

inadequate notice, as the class members. Moreover, Plaintiffs' claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." 1 NEWBERG ON CLASS ACTIONS § 3.13 (3d ed. 1992). Like each class member, each Plaintiff's notice failed to provide any individualized information used to make the ineligibility decision or explain the applicable eligibility standards. *Compare* Chianne D. Decl., Ex. B (ECF 2-6); Jenifer V. Decl., Ex. A (ECF 2-5); Taylor Notice. (ECF 2-7); *with* L.M.J. notice (ECF 2-8), G.M. notice (ECF 2-9), A.H. notice (ECF 2-10), M.G. notice (ECF 2-11), L.S. notice (ECF 2-12); F.M. notice (ECF 2-13); *see J.M.*, 337 F.R.D. at 450 (finding typicality due to form notice though one plaintiff experienced no coverage gap).

Further, Plaintiffs A.V. Kimber Taylor, and K.H. represent Subclass A, and their claims, like all Subclass A members, arise from Defendants' use of reason codes that are devoid of explanation as to why an individual is Medicaid ineligible. *Compare* Jennifer V. Decl. at Ex. B (ECF 2-5), Taylor Notice (ECF 2-7) *with* L.M.J. notice (ECF 2-9), A.H. notice (ECF 2-10), M.G. notice (ECF 2-11), L.S. notice (ECF 2-12), F.M. notice (ECF 2-13). Plaintiffs Chianne D., C.D., and A.V. and their claims, like every Subclass B member, arise from Defendants' use of reason codes terminating their Medicaid eligibility that merely stated their income was "too high" without more. *Compare* Chianne D. Decl. at Ex. B (ECF 2-6); Ex. 2, 1/18/24 A.V. Notice *with* L.M. notice (ECF 2-9). All named Plaintiffs, like all class members, received notices that also did not provide a clear explanation of the method for requesting a hearing. As

such, the named Plaintiffs' claims are typical of the class's claims.

### 4. Adequacy of representation

Finally, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189 (citations omitted).

There is no conflict of interest between the class representatives and the absent class members. Every class member seeks to have their right to legally sufficient Medicaid termination notices enforced. The class members' interest in having their rights under federal Medicaid and constitutional law upheld does not interfere with or oppose one another. *Valley Drug Co.*, 350 F.3d at 1189; *see also Amchem Prods., Inc.*, 521 U.S. at 625-26. The requested relief further evidences the lack of conflict as all of the claims in the case involve the same policies and course of conduct by Defendants, and Plaintiffs only seek injunctive and declaratory relief. Am. Compl. at 43-44. Furthermore, the satisfaction of the commonality and typicality requirements, as argued *supra*, provides a strong indication that "the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

Finally, class counsel is competent to represent class interests. *See Valley Drug Co.*, 350 F.3d at 1189. Florida Health Justice Project and the National Health Law Program have significant experience litigating Medicaid and due process claims in

federal court. Additionally, all counsel are experienced with prosecuting class actions, and counsel have been working steadily and competently to investigate and prosecute this case. The class interests in this case will be adequately protected.

### B.  The proposed class is ascertainable.

The proposed class must be "adequately defined and clearly ascertainable." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). An adequately defined class is one that enables the district court "to evaluate whether a proposed class satisfies Rule 23(a)." *Cherry*, 986 F.3d at 1303; *Id.* at 1302 ("A class is inadequately defined if it is defined through vague or subjective criteria.").

Here, class membership is determined by reviewing the particular reason codes (or lack thereof) that appear in the notice issued to an individual. For clarity, Plaintiffs have filed a list of reason codes captured by the class definitions.[4] *See* ECF 47-3. The criteria for class membership are not vague or subjective. In fact, Mr. Davis's declaration shows that DCF is able to identify the individual class members using data in its possession. Moreover, while not a requirement of class certification, *Cherry*, 986 F.3d at 1303, identification of class members is administratively feasible. As such, the putative class is readily identifiable and ascertainable.

### C.   The proposed class satisfies Rule 23(b)(2).

---

[4] Plaintiffs did not include the exact language of the reason codes in the class definition to protect against the possibility of post-filing changes that might remove individuals from the class without resolving the underlying dispute. For example, A.V.'s most recent notice appears to include a new formulation, but still fails to identify the household income used or the applicable income standard, stating "Reason: Your child(ren) are not eligible for Medicaid due to your family's income, but they may be able to get health insurance through Florida KidCare. . . ." *See* Ex. 2 at 4.

This lawsuit squarely meets the Rule 23(b)(2) requirement that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, Defendants' use of standardized notices that lack a clear statement of the reasons for the decision has harmed, or threatens to harm in the future, all class members, and Plaintiffs are seeking injunctive and declaratory relief that would apply to the class as a whole. *See Wal-Mart*, 564 U.S. at 360 (holding that Rule 23(b)(2) is met "when a single injunction or declaratory judgment would provide relief to each member of the class"). The current action is precisely the scenario for which Rule 23(b)(2) was intended. *See DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012).

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification and appoint undersigned counsel as class counsel.

Dated: February 20, 2024

Respectfully submitted,

By: */s/ Sarah Grusin*

**NATIONAL HEALTH LAW PROGRAM**
Sarah Grusin (admitted *pro hac vice*)
Jane Perkins (admitted *pro hac vice*)
Miriam Heard (admitted *pro hac vice*)
Amanda Avery (admitted *pro hac vice*)
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27541
(919) 968-6308

**FLORIDA HEALTH JUSTICE PROJECT**
Katy DeBriere (Fl. Bar No. 58506)
Miriam Harmatz (Fl. Bar No. 562017)
Lynn Hearn (Fl. Bar No. 123633)

debriere@floridahealthjustice.org
harmatz@floridahealthjustice.org
hearn@floridahealthjustice.org