# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHIANNE D., *et al.*,

    Plaintiffs,

v.

JASON WEIDA, in his official capacity as Secretary for the Florida Agency for Health Care Administration, and SHEVAUN HARRIS, in her official capacity as Secretary for the Florida Department of Children and Families,

    Defendants.

_____/

Case No. 3:23-cv-00985-MMH-LLL

### PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES TO A.V.

Pursuant to Fed. R. Civ. P. 33, Plaintiff A.V., by and through her next friend, Jennifer V. and undersigned counsel, provide responses to Defendants' First Set of Interrogatories to A.V. and states:

### INTERROGATORIES

**INTERROGATORY NO. 1:** Do you contend that DCF's determination (set forth in the Notice of Case Action) that you are ineligible for Medicaid was incorrect? If so, identify each Medicaid-eligible population group to which [sic] contend you belonged, and, as to each, state the facts that support your claim of eligibility.

**RESPONSE:** Yes, I contend that DCF's determination set forth in the Notice of Case Action dated May 16, 2023, finding A.V. ineligible for Medicaid

was incorrect. A.V. belongs to the Medicaid eligible population group of "children under 19." *See* DCF Program Policy Manual, Section 2030.0902. On May 16, 2023, A.V. turned one year old. She resides in a household of eight (8) which includes her parents, Jennifer V. (44) and Henry V. (36), and her siblings Andrew C. (22), D.C. (17), J.C. (14), L.V. (6), and N.C. (19). N.C. receives Supplemental Security Income (SSI). My husband and I claimed these children as dependents on our federal income taxes for 2022 and we file jointly. The 2023 monthly income limit for a one-year-old child under the Medicaid eligible population group of "children under 19" for a household of eight is $6,110.00. *See* DCF Program Policy Manual, Appendix A. There is no asset test.

Based on continuous eligibility, A.V. was, at least, eligible through the entire month May 2023 as a newborn born in May 2022. *See* Fla. Stat. § 409.904(6) ("…a child who has not attained the age of 5 and who has been determined eligible for the Medicaid program is deemed eligible for a total of 12 months regardless of changes in circumstances other than attainment of the maximum age."). Thus, DCF was required to determine A.V.'s Medicaid eligibility for June 2023 and ongoing using the household's countable income received in May 2023. *See* DCF Program Policy Manual, Section 2430.0204 ("[w]hen averaging income, use the most recent consecutive four weeks…").

A.V.'s total household income in May 2023 was as follows:

|  | Henry V. | Jennifer V. |
|---|---|---|
| 5/1/23-5/14/23 | $2354.10 | $392.38 |

| | | |
|---|---|---|
| 5/15/23-5/28/23 | $2308.18 | |
| 5/15/23-5/30/23 | | $87.79 |
| 5/29/23-6/11/23 | $2262.26 | |

Henry V. is paid "biweekly (every two weeks)" and "[s]ince eligibility and benefit amounts are issued based on a calendar month; income received other than monthly is to be converted to a monthly amount." *See* DCF Program Policy Manual, Section 2430.0700. Jennifer V. is paid "semimonthly." *Id.* Using DCF's income conversion method for biweekly payments, Henry V.'s biweekly income for May 2023 was $2,331.14 ("if income is received biweekly, add two pay periods and divide by two to get the biweekly average."). *See* DCF Program Policy Manual, Section 2430.0509. Jennifer V.'s semimonthly income for May 2023 was $240.10 ("if income is received semimonthly, add two pay periods and divide by two to get the semimonthly average."). There is no other household income. Therefore, the monthly countable income for purposes of A.V.'s June Medicaid eligibility was $5,142.48 (($2,331.14 x 2) + ($240.10 x 2)). *See* DCF Program Policy Manual, Section 2430.0700. $5,142.48 is below the income limit for A.V.'s Medicaid population category and thus she remained eligible for Medicaid in June 2023 and ongoing.

Importantly, if DCF had correctly found A.V. eligible for Medicaid in May 2023, A.V. would receive one year of continuous coverage and would not need to renew her eligibility again until May 2024. *See* Fla. Stat. § 409.904(6).

3

**INTERROGATORY NO. 2:** Were you or Jennifer V. confused by—or did you or Jennifer V. have questions about—the Notice of Case Action? If so, describe all efforts that you (or anyone on your behalf) made to obtain clarification or additional information and the outcome of those efforts.

**RESPONSE:** Yes, I was confused by and had questions about the Notice of Case Action. Upon my first review of the Notice of Case Action, I did not realize that it was a notice informing me A.V.'s Medicaid was being terminated because the notice also said that A.V. was eligible for Medicaid through a different coverage group. I thought that the notice may be telling me A.V. was being switched to a new Medicaid managed care plan. I was further confused by the fact that only A.V. and N.C. were on Medicaid, but it listed everyone in our household as losing Medicaid coverage.

Once we learned from A.V.'s pediatrician's office that A.V. lost insurance coverage, we began to try and figure out what happened.

Around the same time, I was overwhelmed and asked my husband, Henry V., to help determine what went wrong especially because he had control over our federally facilitated marketplace (FFM) and the Florida Healthy Kids Corporation (FHKC) accounts. Henry V. called A.V.'s Medicaid managed care plan (Aetna), FFM, and FHKC to try to figure out why A.V.'s Medicaid had been terminated and how to connect her to health insurance. He did not receive any useful information but instead was told to call DCF.

He did not call DCF because every time I tried to reach them, I could not get in touch with a human. I would wait on hold and get looped through the

4

automated system. The options on the automated system that I needed were not offered. I would ask to speak with a live person and then it would put me on hold – I would wait sometimes up to an hour and then would hear a click and the line would disconnect. I do not remember how many times I tried to call DCF.

When Henry called FHKC, they specifically told Henry to open a new account in DCF's ACCESS system and file a new Medicaid application for A.V. We did not take those steps, however, because I was concerned it would create more confusion.

At some point, I reached out to Florida Health Justice Project for assistance because we could not figure out how to get A.V. back on Medicaid.

**INTERROGATORY NO. 3:** Did you (or anyone on your behalf) request a fair hearing to contest DCF's determination (set forth in the Notice of Case Action) that you are ineligible for Medicaid? If so, state the date on which the fair hearing was requested and describe the fair-hearing process and its outcome. If not, explain why a fair hearing was not requested.

**RESPONSE:** No, no one requested a fair hearing to contest DCF's determination set forth in the May 16th Notice of Case Action finding A.V. ineligible for Medicaid. A fair hearing was not requested because I decided the more sensible approach to resolving my confusion about her Medicaid eligibility was to participate in this litigation and seek reinstatement through the preliminary relief. This is because I did not know whether DCF was correct about its decision and I did not know what I would say at a hearing. I also wanted to

5

participate in litigation because I wanted to ensure other people do not experience the frustration and confusion we have.

**INTERROGATORY NO. 4:** Do you contend that DCF must make changes to its notices of case action? If so, describe specifically each change that you contend DCF must make.

**RESPONSE:** Yes, I contend that DCF must make changes to its notices of case action. The notices need to be clear about the action the agency is taking. For example, on my May 16th Notice of Case Action, it needed to say which member of the household was receiving Medicaid and for each person actually enrolled, why it was ending. It also needs to include the amount of income DCF uses to determine eligibility, the income limit for each household member and the number of people DCF thinks are in the household. The notices should also explain the eligibility rules for Medicaid, including if there are different rules for different groups. The fair hearing language should be edited to ensure that individuals understand how to request a hearing, including by emailing the DCF Office of Appeal Hearings or using the link on DCF's webpage. It should not say that you "will" have to repay benefits if that is not true because that feels threatening and would make us hesitate to request a hearing.

**INTERROGATORY NO. 5:** State all facts that support your assertion that you (or Jennifer V.) "spent hours on the phone attempting to obtain clarity."

6

ECF No. 3 at 1–2. Your answer should identify the date and duration of each telephone call, the person who initiated the telephone call, all participants to the telephone call, the substance of your inquiries, and the information provided to you.

**RESPONSE:** I cannot recall specific dates, times, and duration during each telephone call I had with state agencies or state agency contractors about the termination of A.V.'s Medicaid in May 2023. I know that me or my husband contacted: DCF, A.V.'s Medicaid managed care plan, FHKC, the FFM, and A.V.'s pediatrician's office to discuss A.V.'s coverage. I do not know the names of the individuals I or Henry V. spoke to at DCF, the managed care plan, FHKC, the FFM, or the pediatrician's office.

Regarding the pediatrician's office call, I know that we went to A.V.'s one-year well-check on May 30, 2023. At that time, the pediatrician told us they were out of a vaccine and to try again in one to three weeks. So, we then scheduled an appointment for that vaccine on June 6, 2023. Between May 31st and June 6th, I received a call from the pediatrician's office notifying me that A.V. did not have insurance and therefore they had to cancel the June 6th appointment. I think that call was under 5 minutes. I was surprised and confused when I learned this information.

Additionally, regarding my attempts to contact DCF, as stated above, many of the calls were made to DCF but I was put on hold after having to go through a series of automated messages and then would be disconnected. These calls occurred

7

between the date of on or about June 8, 2023, to around the end of July 2023. We called DCF at least three times. I was never able to connect with a person at DCF. Those calls were a minimum of forty-five minutes. I remember the length of these calls because as time would pass while I was on hold, the experience trying to get meaningful information from the call would become more and more distressing. This led me to the question, if I cannot get meaningful information, how am I supposed to rectify any mistake on my side or on DCF's side?

Regarding Henry V.'s calls with FHKC, I do remember that FHKC told Henry to call DCF and specifically to open a new account in DCF's ACCESS system and file a new Medicaid application only for A.V. As I stated earlier, I did not think this was a good idea and may lead to more confusion, so we did not open a new account. I know there were many calls, but I do not know the length of the calls.

Regarding Henry V.'s calls with the Medicaid managed care plan, I believe that calls were half an hour to an hour. That call was to check the status of A.V.'s eligibility.

Regarding Henry V.'s calls with the FFM, I know that the substance was to discuss what happened to our application for insurance coverage, including A.V. The FFM told him to call DCF.

We did not get any useful information about why A.V.'s coverage had ended during any of the calls.

**INTERROGATORY NO. 6:** Do you contend that your income did not

8

exceed the applicable income limits when DCF determined in the Notice of Case Action that you are ineligible for Medicaid? If so, state all facts that support your contention.

**RESPONSE:** Yes. Please see my detailed response to Interrogatory No. 1.

**INTERROGATORY NO. 7:** Do you contend that you "cannot afford necessary health care" (ECF No. 3 at 2)? If so, state all facts that support your contention.

**RESPONSE:** Yes. A.V. has been healthy but we have incurred out-of-pocket payments for her health care that we have had to put on a credit card. We skipped A.V.'s fifteen-month well-check in August 2023 because we could not afford to pay out of pocket. During the week of November 6, 2023, we took A.V. for a sick visit because I was worried she was getting an ear infection. We incurred an out-of-pocket expense of $136.00 for that visit. The office then returned to us $44.00 of the $136.00 so the total out of pocket cost was $92.00.

Additionally, A.V. had a well-check on November 30, 2023. I declined the standard vision screen during this appointment as well as a lead test, and anemia test to save money and because the pediatrician said it would be okay to defer to a later time. The pediatrician's office discounts the cost of care for self-pay patients, so the total visit was $177.00.

I believe A.V. is also missing a vaccine. Without all of her vaccines, I will be unable to enroll her in daycare which impacts my ability to work.

At the time we incurred these expenses, we did not have the money to

afford them out of pocket. If we did not have a credit card, there is no way we could have afforded this care.

**INTERROGATORY NO. 8:** Describe all efforts you (or anyone on your behalf) has made to secure healthcare coverage since you received the Notice of Case Action; all healthcare coverages, including private insurance and public-assistance programs, that you have had since your Medicaid coverage was terminated; and the periods of time during which you had each healthcare coverage.

**RESPONSE:**  See responses to Interrogatories Nos. 2 and 5 above. In addition to those efforts, we have made the following efforts: on August 22, 2023, we filed this lawsuit requesting that A.V.'s coverage be reinstated. Once it was determined A.V. would not be placed back on to Medicaid quickly through preliminary relief, we filed an application on December 15, 2023 through the FFM because it was open enrollment. The FFM notice noted that A.V. was likely not Medicaid eligible based on that month's countable household income of $6,142.00. In response, Henry V. contacted the marketplace hotline to determine whether A.V. had been found eligible for the Children's Health Insurance Program administered by FHKC. The FFM representative stated she saw a letter dated December 17, 2023 to the FFM from FHKC which said that A.V. had been denied CHIP enrollment. The FFM representative further stated that we should expect a letter in the mail from FHKC. Henry V. checked our FHKC account after his call with the FFM representative. A.V.'s name was listed in the FHKC account but

10

under her name, the account said, "Please contact the call center at 1-888-540-KIDS (5437) for more information." When Henry V. called as instructed, he was told that he needed to upload paystubs from November 2023. Henry V. completed that task on December 22, 2023. Henry was told that, after the paystubs were uploaded, FHKC would tell him next steps via email. On January 16, 2024, he received two notices FHKC notices. One notice said that Daniel C., Julia C., and Lydia V. were eligible for KidCare at a $15.00 per month premium. The other notice stated A.V. was denied Florida KidCare eligibility because she was being referred to Medicaid.

    On January 18, 2024, we received a notice of case action from DCF finding that A.V. was enrolled in medically needy with a share of cost in the amount of $6,216.000. This notice was addressed to Henry V. The notice is confusing. It says "Your child(ren) are not eligible for Medicaid…" but does not identify which child or children to which the notice is referring. Additionally, the FHKC notice says A.V. cannot have KidCare because she was referred to Medicaid, but the DCF January 18th notice suggests that A.V. can enroll in KidCare. It is also confusing because it suggests that A.V.'s and Andrew's Medicaid is ending but neither are currently enrolled in Medicaid. Similarly, it suggests that Natalie's Medicaid is ending but she receives Supplemental Security Income and automatically gets Medicaid as a result. The notice also does not contain the income DCF used to make this decision, the income standard that applies to each person in our household, or how many members they are counting as part of that household. I remained confused by this notice.

11

There is a second notice from DCF dated January 18, 2024, that is addressed to me but that one only has Andrew C. and Natalie C. and it says that their medically needy enrollment ends on January 31, 2024 because they are receiving the same type of assistance from another program. I have no idea what that means. Natalie needs health insurance and I am terrified about making a mistake with her Medicaid.

**INTERROGATORY NO. 10:** Do you contend that DCF did not mail the Notice of Case Action to you (or Jennifer V.) on or about May 16, 2023? If so, state all facts that support your contention.

**RESPONSE:** I do not know if DCF mailed or did not mail the May 16, 2023, Notice of Case Action. I know that neither me nor my husband received the Notice of Case Action via mail but, instead, found the notice in our online ACCESS account. I assume that, if it was mailed, we would have received it. I know for sure that I never received an envelope with a yellow stripe.

**INTERROGATORY NO.11:** State all facts that support the following assertion: "I think our income is below the Medicaid limit for young children . . . ." (ECF No. 2-5 ¶ 16).

**RESPONSE:** I think our income is below the Medicaid limit for young children based on the analysis I set forth in Interrogatory No. 1.

12

I hereby declare, under the pains of the penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

*Jennifer V.*
Jennifer V. (Jan 20, 2024 23:22 EST)
_____
Jennifer V.

# 2023 1 20 Pls Response to Ds First Set of Interrogatories to AV

Final Audit Report 2024-01-21

| | |
|---|---|
| Created: | 2024-01-21 |
| By: | Katy DeBriere (debriere@floridahealthjustice.org) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAefNH0uHOI2YlUOPHe7xAUfhlHAhH5IfT |

## "2023 1 20 Pls Response to Ds First Set of Interrogatories to AV " History

- Document created by Katy DeBriere (debriere@floridahealthjustice.org)
  2024-01-21 - 3:52:30 AM GMT- IP address: 73.148.201.197

- Document emailed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for signature
  2024-01-21 - 3:52:58 AM GMT

- Email viewed by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
  2024-01-21 - 4:02:28 AM GMT- IP address: 73.204.211.166

- Signer ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ entered name at signing as Jennifer V.
  2024-01-21 - 4:22:45 AM GMT- IP address: 73.204.211.166

- Document e-signed by Jennifer V. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ )
  Signature Date: 2024-01-21 - 4:22:47 AM GMT - Time Source: server- IP address: 73.204.211.166

- Agreement completed.
  2024-01-21 - 4:22:47 AM GMT

Adobe Acrobat Sign