## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHIANNE D., *et al.*,

      Plaintiffs,

                                       Case No. 3:23-cv-00985-MMH-LLL

v.

JASON WEIDA, in his official capacity
as Secretary for the Florida Agency for
Health Care Administration, and
SHEVAUN HARRIS, in her official
capacity as Secretary for the Florida
Department of Children and Families,

      Defendants.

_____/

## DEFENDANTS' MOTION TO BIFURCATE

      Pursuant to Federal Rule of Civil Procedure 42(b), Defendants respectfully request that the Court determine liability—and not remedies—at trial scheduled for May and then, if necessary, conduct a remedy phase to evaluate potential injunctive remedies tailored to any specific deficiencies identified by the Court.

## Introduction

      Given the many complexities of this case, this Court should first determine the nature and extent of any liability and only then consider the issue of remedies. Only after the Court determines liability can the parties provide evidence properly tailored to any specific legal violations that the Court finds—evidence necessary to

enable the Court to make a sound and well-reasoned decision on potential injunctive relief.

In this case, the fashioning of a sensible, effective, and practical injunction (if the Court finds liability) will be challenging and complicated. Plaintiffs assert scores of alleged deficiencies in the State's notices, without any regard to the hard technical constraints imposed by the dated and complex computer systems that generate the notices. The cost to the public of some potential remedies in this putative class action might be enormous. Any remedy must be tailored to the specific legal violation the Court finds and is therefore highly dependent on the Court's liability determination. The law itself imposes further limitations on equitable relief, forbidding injunctions that are adverse of the public interest or offend principles of comity and federalism. Clear and complete information about potential remedies—and the costs, burdens, and feasibility of those remedies—is essential to enable the Court to fashion a practical and judicious remedy and avoid error in conducting this delicate balancing act.

Defendants therefore respectfully request that the Court separate the liability and remedy determinations. Defendants request that the May trial focus on liability only and that, if it finds liability, the Court then initiate a remedy phase that includes briefing, evidence, and, if necessary, an evidentiary hearing. This process will ensure that the parties' proposed remedies, and all evidence relevant to their costs, burdens, and feasibility, are tailored to the specific deficiencies the Court identifies after a trial on liability, and that the Court will have the most pertinent and probative evidence at its disposal. It will also afford the parties an opportunity to explore the possibility

of settlement after the Court makes its liability determination but before it enters an injunction. Finally, while bifurcation would afford the Court and the parties the time necessary to fully consider the intricate question of remedies, the entire proceeding will still conclude before the September trial date that the parties initially proposed.

## Argument

This putative class action challenges "the legal sufficiency of notice provided to certain Medicaid recipients in Florida who have been determined ineligible for Medicaid coverage." ECF No. 68 at 3. While Plaintiffs' essential allegation is that the State's termination notices do not provide "adequate individualized written notice of the reason for the termination and the opportunity for a pre-termination fair hearing," ECF No. 77 at 1, their Amended Complaint goes much further and recites more than 30 alleged deficiencies in the State's eligibility redetermination process.

As this case has unfolded, the number of grievances that Plaintiffs assert has not narrowed, but dramatically increased. The 30-page report of Plaintiffs' expert witness, Dr. Brenda Cude, purports to identify dozens of additional deficiencies not mentioned in Plaintiffs' Amended Complaint.[1] Dr. Cude identifies many items of information or clarification that she contends Florida's notices should include and proposes many other changes to those notices—for example, changes to the order in which information is presented, to the computer-generated tables contained in the notices, and to the formatting of headings, reason codes, and other notice language.

---

[1] Defendants do not consent and will object to the trial of unpleaded issues.

3

Plaintiffs' still-evolving and continually expanding compilation of grievances greatly impairs Defendants' ability to present the Court with helpful and informative evidence at trial of the system impacts of the remedies that might address Plaintiffs' concerns. With finite resources, Defendants can hardly chase Plaintiffs in scores of different directions and fully assess the costs, burdens, and feasibility of all system changes that might resolve an item on Plaintiffs' lengthy list of purported grievances. The parties' and the Court's resources would be wasted by presenting trial evidence on the scope and impacts of remedies designed to address perhaps dozens of issues on which the Court ultimately does not find liability.

Clear and comprehensive information on the costs, burdens, and feasibility of potential remedies is necessary to enable this Court to make a sound and practical decision when framing an injunction with deep implications for the public interest. Rather than issue an injunction upon insufficient information and risk unforeseen consequences, this Court should separate the issue of remedies from that of liability. To ensure that any injunction it issues will be feasible and practical, the Court should invite focused evidence directed to remedies *after* the Court determines the nature and extent of any liability.

As the Court is aware, the computer system that generates Florida's notices—the ACCESS Florida System—is highly complex. The ACCESS Florida System is an integrated eligibility system responsible for administering several public-assistance programs, including cash and food assistance, and enables eligibility determinations for Medicaid. Designed nearly 40 years ago, the ACCESS Florida System relies on a

mainframe for eligibility and benefit issuance. Over time, multiple ancillary software applications have been developed to provide additional tools and functionality, such as an online customer application, a document-imaging system, and a web-based portal for case and workflow management. The result is a complex environment of 28 interconnected software applications and components across various platforms.

Changes to this system—if feasible at all—might come with heavy costs, and this calculus varies greatly depending on the precise nature of the required change. These costs include monetary costs, which might be immense, as well as opportunity costs: efforts to reconfigure the ACCESS Florida System might divert resources from and delay the modernization project that is now underway to develop a replacement.

Any injunction issued in this case must navigate not only the usual injunction factors, including that the injunction not be adverse to the public interest, *see KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006), but also the limitations that comity and federalism place on injunctive remedies directed to state officials, *see Consumer Party v. Davis*, 778 F.2d 140, 146 (3d Cir. 1985). As the Supreme Court has explained, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief," *Rizzo v. Goode*, 423 U.S. 362, 379 (1976); *accord Morrow v. Harwell,* 768 F.2d 619, 628 (5th Cir. 1985) (explaining that injunctive relief awarded against state officials may "intrude into state affairs no more than is absolutely necessary"). And of course federalism concerns are "heightened when . . . a federal court decree has the effect of dictating state or local budget priorities." *Horne v. Flores*, 557 U.S. 433, 448 (2009).

Separation of the liability and remedy determinations will better enable this Court to navigate these legal and practical constraints. The Court should determine liability at the May trial and, if necessary, conduct a remedy phase once it determines liability.

Federal Rule of Civil Procedure 42(b) "confers broad discretion on the district court." *Harrington v. Cleburne Cnty. Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001). It allows this Court to "order a separate trial of one or more separate issues" merely for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "That is not a high standard . . . ." *Harrington*, 251 F.3d at 938 (concluding that "the district court's concern for clarifying the issues to be tried suffices to permit the court to separate the trials"). A motion under Rule 42(b) is "not subject to a specific time constraint" and may be granted "at any time," and often is most appropriately presented in the later stages of litigation, when the issues to be determined by the Court have come into sharper relief. *Ho v. Marathon Pat. Grp.*, No. 5:21-cv-00339, 2022 WL 17886036, at *1 (C.D. Cal. Aug. 9, 2022) (collecting cases).

The procedure that Defendants propose is similar to the procedure this Court followed at the preliminary-injunction stage. At the conclusion of the preliminary-injunction hearing, this Court informed the parties of its tentative determination of Plaintiffs' likelihood of success on their claims. It then invited a proposed injunction and granted Defendants leave to file a response, together with evidence of the costs, burdens, and feasibility of the injunction that Plaintiffs proposed. ECF No. 74 at 2. Defendants then filed declarations showing that reinstatement of all class members

to Medicaid, as Plaintiffs proposed, would cost the public an estimated $87.1 million per month. ECF No. 76 at 4–6. The Court's prior, tentative determination of liability provided necessary guidance to Plaintiffs in preparing their proposed injunction and Defendants in presenting argument and evidence in response to Plaintiffs' proposal.

A similar, sequential approach will be even more important at the permanent-injunction stage. Only after the Court decides the many liability issues that Plaintiffs intend to raise can Plaintiffs propose an injunction calculated to remedy any legal violations that the Court finds. And only then can Defendants evaluate the proposed remedies and provide argument and evidence that will assist the Court in framing a practical, administrable injunction that fully weighs and properly balances the many considerations that might affect the propriety of the remedies that this Court might order.

Bifurcation will streamline the May trial and allow the parties to confine their trial presentations to the question of liability. It might also open a door to mediation and settlement once the Court's determination of liability is known—a consideration that weighs in favor of bifurcation. *See Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004) (explaining that, in assessing a motion to bifurcate under Rule 42(b), courts should consider "whether the settlement of the claims or judicial economy would be facilitated" (quoting *Morris v. Northrop Grumman Corp.,* 37 F. Supp. 2d 556, 580 (E.D.N.Y.1999))).

Plaintiffs will likely oppose this motion on the ground that bifurcation may prolong this proceeding and defer relief that Plaintiffs claim is due. But the remedy

phase can be conduced efficiently, at a reasonable pace, and the entire proceeding can still be concluded before the September trial date that the parties proposed in their initial case-management report. ECF No. 44 at 3. What is more important than a quick decision is a right one; this Court must have the information it needs to make a sound assessment. *See Kusay v. United States*, 62 F.3d 192, 195 (7th Cir. 1995) (Easterbrook, J.) ("'Haste makes waste' is an old adage. It has survived because it is right so often."). Bifurcation of this case to allow the Court to determine liability first and then to invite argument and evidence on proper remedies adapted to the Court's liability determination will promote an appropriate outcome, increase the likelihood of a mediated resolution, and make only a modest addition to the length of this case.

## Conclusion

For these reasons, this Court should limit the May trial to the issue of liability and reserve the issue of remedies to a post-trial evidentiary proceeding.

## Local Rule 3.01(g) Certification

Defendants certify that they have conferred with Plaintiffs and that Plaintiffs oppose the relief requested in this motion.

Dated February 29, 2024.

/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
James Timothy Moore, Jr. (FBN 70023)
Ashley H. Lukis (FBN 106391)
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: 850-577-9090
andy.bardos@gray-robinson.com
tim.moore@gray-robinson.com
ashley.lukis@gray-robinson.com
*Attorneys for Defendants*