## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHIANNE D.; C.D., by and through
her mother and next friend, Chianne D.;
A.V., by and through her mother
and next friend, Jennifer V.; KIMBER
TAYLOR; and K.H., by and through his
mother and next friend, Kimber Taylor,

                Plaintiffs,

-vs-                           Case No. 3:23-cv-985-MMH-LLL

JASON WEIDA, in his official
capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION, and SHEVAUN
HARRIS, in her official capacity as
Secretary for the FLORIDA
DEPARTMENT OF CHILDREN
AND FAMILIES,

                Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Plaintiffs' Amended Motion and
Memorandum in Support of Class Certification (Doc. 85; Motion) filed on
February 20, 2024.  Defendants Jason Weida, in his official capacity as
Secretary for the Florida Agency for Health Care Administration (AHCA), and
Shevaun Harris, in her official capacity as Secretary for the Florida
Department of Children and Families (DCF) (collectively, the State) filed a

response in opposition to the Motion on March 12, 2024.[1] <u>See</u> Secretary Weida and Harris' Response to Plaintiffs' Motion for Class Certification (Doc. 93; Response).  On March 26, 2024, with leave of Court (Doc. 96), Plaintiffs filed a reply in support of the Motion.  <u>See</u> Plaintiffs' Reply in Support of their Amended Motion for Class Certification (Doc. 100; Reply).  In addition, the State filed a motion to dismiss the claims of Plaintiffs Chianne D. and C.D. for lack of standing pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure (Rule(s)).  <u>See</u> Defendants' Motion to Dismiss Chianne's and C.D.'s Claims (Doc. 87; MTD), filed on March 1, 2024.  Plaintiffs responded to the Motion to Dismiss on March 29, 2024.  <u>See</u> Plaintiffs' Response to Defendants' Motion to Dismiss Chianne's and C.D.'s Claims (Doc. 101; Response to MTD).  With leave of Court, <u>see</u> Order (Doc. 104), the State filed a reply in support of its Motion to Dismiss on April 3, 2024.  <u>See</u> Defendants' Reply in Support of Motion to Dismiss (Doc. 108; MTD Reply).  For the reasons set forth below, the Court will grant Plaintiffs' request for certification of a class but modify the class definition.  In light of the modified class definition, a determination as to

---

[1] As required by federal law, 42 U.S.C. § 1396a(a)(5), Florida has designated the AHCA as the single state Medicaid agency. <u>See</u> Fla. Stat. § 409.902(1). AHCA has delegated responsibility for processing Medicaid eligibility determinations to Florida's Department of Children and Families (DCF). <u>Id.</u> AHCA, as the designated single state agency, is required to ensure DCF abides by federal Medicaid laws and regulations. <u>See</u> Fla. Stat. § 409.902(1); 42 C.F.R. § 431.10(c)(3). It is not necessary to distinguish between these two entities for the purpose of resolving the instant Motion.

Chianne D. and C.D.'s standing is unnecessary and the Court will deny the Motion to Dismiss as moot.[2]

## I.    Background

### A. Medicaid and the Unwinding

Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., known as the Medicaid Act, "is a federal aid program designed to provide federal funding to States that choose to reimburse certain costs of medical treatment for needy persons." See Martes v. Chief Exec. Officer of S. Broward Hosp. Dist., 683 F.3d 1323, 1324 (11th Cir. 2012). Although state participation is voluntary, "if a State decides to participate, it must comply with all federal statutory and regulatory requirements." Id. Florida has opted to participate in the Medicaid program and thus is required:

> to provide medical assistance to the "categorically needy," a group that includes "individuals eligible for cash benefits under the Aid to families with Dependent Children (AFDC) program, the aged, blind, or disabled individuals who qualify for supplemental security income (SSI) benefits, and other low-income groups such

---

[2] The Court notes that on April 17, 2024, the State filed a motion to continue the trial in this case which is currently scheduled to begin on May 13, 2024. See Defendants' Time-Sensitive Motion for Continuance of Trial and for Scheduling Conference (Doc. 118). Plaintiffs filed a response in opposition on April 22, 2024. See Plaintiffs' Response to Defendants' Time-Sensitive Motion for Continuance of Trial and for Scheduling Conference (Doc. 120). Given the importance of the issues raised in this case, and the substantial risk of harm to the class members, the Court has endeavored to move this case to a final judgment on the merits as expeditiously as possible. Because the Court is issuing this ruling on the Motion for Class Certification and Motion to Dismiss, and intends to issue a ruling on the State's pending Motion to Bifurcate (Doc. 86) soon thereafter, the Court finds that the State has sufficient time to prepare for the bench trial and its request for a continuance is due to be denied.

as pregnant women and children entitled to poverty-related coverage."

Martes, 683 F.3d at 1324-25 (quoting Pharma. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 651 n.4 (2003)); 42 U.S.C. § 1396a(a)(10)(A)(i). The Court will refer to these categories of recipients as "population groups" for Medicaid eligibility. To qualify for Medicaid as "categorically needy," the income of an individual in a covered population group must also fall below the applicable income limit and for disability-related population groups, there is a resource or asset limit as well as an income limit. See Fla. Stat. § 409.903. The limits that apply vary among population groups as does the manner in which income is calculated. Id.

In addition to the "categorically needy," Florida also provides medical assistance to the "medically needy." See Martes, 683 F.3d at 1325. The "medically needy" are individuals "'who meet the nonfinancial eligibility requirements for inclusion in one of the groups covered under Medicaid [the "population groups"], but whose income or resources exceed the financial eligibility requirements for categorically needy eligibility.'" Martes, 683 F.3d at 1324-25 (quoting Pharma. Research & Mfrs. of Am., 538 U.S. at 651 n.5); 42 U.S.C. § 1396a(a)(10)(C)). Individuals enrolled in the medically needy program have a monthly "share of cost" which must be met each month before Medicaid

-4-

coverage begins.  See First Amended Complaint (Doc. 77; FAC) ¶¶ 49-50; Defendants' Answer and Affirmative Defenses (Doc. 82; Answer) ¶¶ 49-50.

Typically, an individual's eligibility for Medicaid must be renewed once every twelve months, unless there is a "change in a beneficiary's circumstances that may affect eligibility."  See 42 C.F.R. § 435.916(a)(1), (b), (d).  However, as to certain population groups, Florida extends a period of continuous coverage, regardless of changes in circumstance.  For example, "[i]ndividuals who are enrolled in Medicaid or CHIP[3] while pregnant are eligible for 12 months of postpartum coverage, regardless of changes in circumstances, like increases in income."  See FAC ¶ 41; Answer ¶ 41; see also Fla. Stat. § 409.903(5).  Likewise, children under age five receive such continuous coverage for one-year, and children under age nineteen receive continuous coverage for six-months.  See Fla. Stat. § 409.904(6).

Significantly, during the COVID-19 pandemic, the federal government provided enhanced federal funding to state Medicaid programs on the condition that states agree to maintain Medicaid coverage for almost all enrolled individuals.  See Families First Coronavirus Response Act, Pub. L.

_____

[3] CHIP stands for Children's Health Insurance Program.  See FAC ¶ 21a.ii.  Florida's CHIP program for children ages one through four is called MediKids.  Id. ¶ 118.  For children ages five and older, the CHIP program is called KidCare.  Id. ¶ 122.  KidCare is administered through the Florida Healthy Kids Corporation (FHKC).  Id. ¶ 132.  These various terms are used throughout the record in this case.  For ease of reference, and because the differences do not matter here, the Court will refer to all of these programs as CHIP.

No. 116-127, § 6008, 134 Stat. 178, 208-209; see also FAC ¶ 2; Answer ¶ 2. As such, "[d]uring the COVID-19 public health emergency, Florida provided continuous Medicaid coverage as required by federal guidance." See Declaration of Angela Pridgeon (Doc. 39-2; Pridgeon Decl.) ¶ 2. This resulted in a significant increase in the number of individuals and families enrolled in Florida's Medicaid program, "from 3.8 million enrolled in March 2020 to 5.5 million in November 2022." Id. ¶ 3. On March 31, 2023, however, "the Public Health Emergency related continuous-coverage provision for Medicaid recipients ended . . . and DCF returned to the standard Medicaid renewal process." Id. ¶ 4.

Under federal requirements, state Medicaid agencies had "up to 12 months to complete Medicaid reviews from the end of the continuous-coverage period." Id. ¶ 5. Florida created a redetermination plan which the federal Centers for Medicare and Medicaid Services (CMS) approved. Id. ¶¶ 6-7. As of October 5, 2023, "[s]ince Medicaid eligibility re-determinations resumed in April 2023, DCF [had] conducted more than 2.5 million re-determinations." Id. ¶ 8. "Of those, more than 1.7 million individuals were found eligible for Medicaid, nearly 830,000 were found ineligible for Medicaid." Id. ¶ 9. "More than two million redeterminations [were] scheduled to occur between October 2023 and March 2024." Id. ¶ 10. The post-COVID redetermination process is commonly referred to as "unwinding." See FAC ¶ 3; Answer ¶ 3.

Plaintiffs are two adults, Chianne D. and Kimber Taylor, and three children, C.D., A.V., and K.H., whose Medicaid coverage was terminated during the unwinding. Prior to the termination of their benefits, the State issued a written notice to each individual or their household purporting to notify them of the State's ineligibility determination, the end of their Medicaid coverage, and their right to a fair hearing. In this class action lawsuit, Plaintiffs challenge the adequacy of these termination notices, and others like them, under the United States Constitution's Due Process Clause and the Medicaid Act.

### B. Notices

Although the content of each termination notice varies, Plaintiffs assert that there are certain standard flaws across all of the challenged notices and these flaws, according to Plaintiffs, are unlawful. Specifically, Plaintiffs argue that the notices uniformly and improperly omit the facts on which the State relied to make the ineligibility determination, the standard used to measure eligibility, and the population group under which the individual was evaluated. See Motion at 5-6, 18. Plaintiffs also appear to contend that the notices do not, but should, include a "description of the various Medicaid eligibility categories." See Reply at 6. Every termination notice also contains standardized fair hearing language which Plaintiffs challenge as inaccurate. See Motion at 6, 18. To demonstrate the uniformity of these flaws, Plaintiffs

submit two template notices, see Medicaid Template Notice (Doc. 2-2); Medically Needy Template Notice (Doc. 2-3), and the termination notice that each Plaintiff received.  See Declaration by Jennifer V. (Doc. 2-5; Jennifer V. Decl.), Ex. A; Declaration of Chianne D. (Doc. 2-6; Chianne D. Decl.), Ex. B; Kimber Taylor Notice (Doc. 2-7; Taylor Notice).  The record also contains six notices sent to unidentified individuals (Docs. 2-8 through 2-13).  The Court will summarize these notices below.

The notices are divided into separate sections with general headings such as "Medicaid" or "Medically Needy."  The section begins with a statement of the decision such as the approval or denial of the individual's application, or that Medicaid is continuing or ending, for the people and timeframes listed below.  Then, one or more household members are listed by name under each section and marked as eligible, ineligible, or enrolled for particular months.  If all of the individuals named in a given section are found to be ineligible, the State includes a line marked "Reason" underneath the list of names, followed by one or more standardized reasons written in all caps.[4]  The Court will refer to this as the "Designated Reason."  The Designated Reasons are derived from reason codes which are "numbers that correspond to common or standard

---

[4] On the current limited record, it appears that if, in a given section, one member of the household is listed as "Enrolled" and another is listed as "Ineligible," no Designated Reason is provided.  See Chianne D. Decl., Ex. B at 3, 5; Jennifer V. Decl., Ex. A at 1-4; Taylor Notice at 2.

reasons for actions taken by DCF, including, but not limited to, eligibility determinations." See Declaration of Kait Zumaeta (Doc. 38-3; Zumaeta Decl.) ¶ 2. "DCF uses approximately 576 reason codes in relation to the Medicaid program," and "86 of these reason codes" are used "to inform recipients of their ineligibility for Medicaid." Id. ¶ 3. The reason code used will vary depending on the recipient's circumstances. See id. ¶ 8. And "reason codes are often used in combination with other reason codes." Id. ¶ 6. The State has instructed "its Processors to select the most specific reason code available" and "to use more specific reason codes together with less specific reason codes." Id. ¶¶ 4, 7. In addition, all termination notices include uniform information concerning the right to a Fair Hearing. This paragraph instructs in pertinent part that: "If you want a hearing, you must ask for the hearing by writing, calling the call center or coming into an office within 90 days from the date at the top of this notice." See, eg., Medicaid Template Notice at 4; Medically Needy Template Notice at 5; Chianne D. Decl., Ex. B at 10; Jennifer V. Decl., Ex. A at 7; Taylor Notice at 8.

Plaintiffs do not challenge all termination notices issued by the State. Rather, Plaintiffs' class claims target two types of termination notices issued during the unwinding. First, Plaintiffs ask the Court to certify a subclass consisting of any individual who received a termination notice that had no Designated Reason or including only Designated Reasons which do not refer to

a specific Medicaid eligibility factor.[5]   As examples, Plaintiffs point to the Designated Reasons included in the termination notices sent to A.V., K.H., and Kimber Taylor which are: "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM" and "YOU OR A MEMBER(S) OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR MEDICAID UNDER A DIFFERENT MEDICAID COVERAGE GROUP."  See Jennifer V. Decl., Ex. A; Taylor Notice at 4-5; see also M.G. Notice (Doc. 2-11) at 3.  In addition, Plaintiffs submit examples of termination notices sent to unidentified individuals which include the Designated Reason that "YOUR MEDICAID FOR THIS PERIOD IS ENDING," either as the only Designated Reason, see A.H. Notice (Doc. 2-10), F.M. Notice (Doc. 2-13), or paired with "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM," see L.M.J. Notice (Doc. 2-8).

Second, Plaintiffs seek to represent another subclass of individuals whose termination notices include "a reason code that states the individual or household is over income for Medicaid eligibility but [do] not identify the

---

[5] In the Motion, Plaintiffs define "eligibility factors" to mean: "age, residency, income, assets or other non-cash resources, receipt of Social Security Administration benefits, Medicare enrollment, citizenship, immigration status, or Social Security Number, disability status, pregnancy, and incarceration status."  See Motion at 1.  Plaintiffs provide a list of reason codes that the State used between February 2017, and January 2019, and highlight in yellow the Designated Reasons which purportedly have this flaw.  See Highlighted Reason Codes (Doc. 47-3); see also Reply at 4.

household income used in the eligibility determination or the applicable income standard." <u>See</u> Motion at 2.[6]  For example, one of the Designated Reasons included in the notice sent to Plaintiffs Chianne D. and C.D. is: "YOUR HOUSEHOLD'S INCOME IS TOO HIGH TO QUALIFY FOR THIS PROGRAM YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM".  <u>See</u> Chianne D. Decl., Ex. B; <u>see also</u> G.M. Notice (Doc. 2-9).

Although disputed by the State, <u>see</u> FAC ¶ 79; Answer ¶ 79, the termination notices in the record uniformly reflect a lack of any factual detail regarding the household under review such as the age, income, pregnancy, or disability status that the State used when making the eligibility determination.  Notably, it is undisputed that the State's termination notices "do not provide the appliable income limit or the calculation of an individual's income." <u>See</u> Answer ¶ 75.  The State also does not dispute that the notices "do not identify the Medicaid-eligible population group to which the individual belonged before the individual became ineligible." <u>Id.</u> ¶ 81.  Likewise, the State admits that the "termination notices do not indicate that household members were evaluated to determine whether they come within any other covered population groups prior to being terminated." <u>See</u> FAC ¶ 83; Answer ¶ 83.  The

---

[6] On the list of Highlighted Reason Codes Plaintiffs highlight these Designated Reasons in green.  <u>See</u> Highlighted Reason Codes (Doc. 47-3).

State also agrees that it uses uniform information on the right to a Fair Hearing in its termination notices. <u>See</u> FAC ¶ 84; Answer ¶ 84.

The Court emphasizes that it has not determined whether the law requires the State to include any of this information in the termination notices. Nor has the Court determined the factual accuracy or legal sufficiency of the fair hearing language. Such determinations, which address the merits of Plaintiffs' claims, are not necessary or appropriate at this stage in the proceedings. Rather, the Court makes only the preliminary observation that these uniform practices exist for purposes of resolving the instant Motion.

## C. Plaintiffs

### i. Chianne D. and C.D.

Prior to the unwinding, Plaintiff Chianne D. had Medicaid coverage for herself and her two children, S.D. and Plaintiff C.D. <u>See</u> Chianne D. Decl. ¶¶ 2-5. Specifically, Chianne D. enrolled in Medicaid while pregnant with S.D., and then enrolled S.D. in Medicaid after his birth in February of 2023. <u>Id.</u> ¶¶ 5, 6, 12. C.D. has been enrolled in Medicaid since 2021, when she was diagnosed with Cystic Fibrosis as an infant. <u>See id.</u> ¶ 3. Prior to the filing of this lawsuit, the State terminated Chianne D. and C.D.'s Medicaid coverage as of May 31, 2023. <u>Id.</u> ¶ 7. To effectuate that termination, the State issued a termination notice to Chianne D.'s family dated April 24, 2023. <u>See</u> Chianne D. Decl. ¶ 9, Ex. B.

In her Declaration, Chianne D. explains that she "tried [her] best but could not understand what this notice meant or why we were losing Medicaid coverage." See Chianne D. Decl. ¶ 10.  For example, one section of the notice labeled "Medicaid" states that all four members of the household were ineligible for Medicaid in April, May, and June of 2023.  See Chianne D. Decl., Ex. B at 2.  This section "made no sense" to Chianne D. because "we had all received coverage in April and May 2023." See Chianne D. Decl. ¶ 11.  The Designated Reason in this section of the notice explains: "YOUR HOUSEHOLD'S INCOME IS TOO HIGH TO QUALIFY FOR THIS PROGRAM YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM." See id., Ex. B at 2.  A different section of the notice, also labeled "Medicaid," advises that "Your Medicaid benefits for the person(s) listed below will end on May 31, 2023." Id., Ex. B at 8.  This section then lists C.D., Chianne. D. and her husband, but not S.D.  Id.  The Designated Reason provided in this section is: "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM." Id.  According to Chianne D., she did not understand the references in the notice to "this program" and "another program," nor did she understand "how to access coverage in that 'other program,' or whether it would cover all the medications and treatments that [her] daughter C.D. needs." Id. ¶ 12.

After receiving this notice, Chianne D. could not understand "what was happening or what to do next," so she contacted DCF in an attempt to obtain answers to her questions.  See Chianne D. Decl. ¶¶ 16-17.  Between May 30, 2023, and June 1, 2023, Chianne D. called DCF numerous times.  In her Declaration, Chianne D. explains that "[b]y the time I was able to get actual clarity about C.D.'s eligibility status for Medicaid and whether [CHIP] would continue to cover all of her daily medical care, it was past June 1, 2023, and so her [CHIP] enrollment would not be effective until July 1, 2023, no matter what I did."  See Chianne D. Decl. ¶ 27.  Chianne D. maintains that as a result of this gap, C.D. lost access to "all her Medicaid covered health care services," including her medical daycare, and certain prescription drugs.  Id. ¶ 20.  In early June, C.D. developed a cough, and had to be taken to the hospital for medical care due to the lack of insurance.  Id. ¶ 22.  Chianne D. received a $2800 hospital bill as a result of this visit.  Id.  Other medical bills incurred for C.D. in June totaled $1136.  Id.  Chianne D. states that "had DCF properly transferred C.D. to [CHIP] for a determination of [CHIP] enrollment and provided [Chianne D. with] comprehensible notice regarding the same, [Chianne D.] could have tried to avoid a gap in C.D.'s coverage and [she] wouldn't have medical bills at collections now."  Id. ¶ 28.  Nevertheless,

Plaintiffs do not contend that the State's eligibility determination concerning C.D. was incorrect, and it is undisputed that C.D. is not eligible for Medicaid.[7]

However, the State's termination of Chianne D.'s Medicaid coverage was in error.  See Declaration of William Roberts (Doc. 87-1; Suppl. Roberts Decl.) ¶ 6.  "A pregnant woman is eligible for Medicaid through the duration of her pregnancy and for the 12-month post-partum period that begins on the last day of her pregnancy."  Id.  Thus, Chianne D., who gave birth to S.D. in February 2023, was still eligible for full Medicaid through February 29, 2024.  Id.  After Plaintiffs initiated this lawsuit, the State corrected its error and reinstated Chianne D.'s Medicaid coverage.  See Second Declaration of Chianne D. (Doc. 47-2; Chianne D. Suppl. Decl.) ¶ 16.  But, at this time, Chianne D.'s post-partum eligibility has concluded and as of March 1, 2024, Chianne D. is no longer enrolled in Medicaid.  See Suppl. Roberts Decl. ¶ 8.  Chianne D. does not contend that she is eligible for Medicaid at this time.

### ii.   A.V.,  through her mother, Jennifer V.

Plaintiff A.V. "has been on Medicaid since shortly after she was born on May 16, 2022."  See Jennifer V. Decl. ¶ 4.  "A.V. relies on Medicaid to cover her medical care," including "all of her well-child checkups and vaccines."  Id. ¶ 5.

---

[7] The Court acknowledges Plaintiffs' contention that, regardless of her ineligibility, C.D. is entitled to Medicaid until she is properly terminated with adequate notice.  See Response to MTD at 3-4.  The Court need not determine whether C.D. is entitled to this relief at this stage in the proceedings and expresses no opinion on the legal availability of reinstatement as a remedy in this case.

The State issued a notice, dated May 16, 2023, terminating A.V.'s Medicaid coverage as of May 31, 2023.  See id. ¶ 7, Ex. A.  Her mother, Jennifer V., does not recall when she saw the notice, but when she read it, she "had no idea that DCF intended it to be a 'termination notice,' sent to inform [her] that A.V.'s Medicaid was ending as of May 31, 2023.  It did not even mention that her Medicaid will end until the bottom of the fifth page."  Id. ¶¶ 7-8.  Instead, Jennifer V. learned that A.V. was no longer insured when her pediatrician's office called on June 5th to cancel A.V.'s June 6th vaccination appointment on that basis.  Id. ¶ 6.

The May 16, 2023 Notice has seven different sections labeled "Medically Needy" addressing various members of the household.  See Jennifer V. Decl., Ex. A at 1-5.  A.V. is included in the sixth and seventh "Medically Needy" sections.  The sixth "Medically Needy" section states that "Your application for Medically Needy dated April 07, 2023 is **approved**. You are enrolled with an estimated share of cost for the months listed below . . . ."  Id., Ex. A at 3.  For the period "Jun, 2023 Ongoing," the section lists A.V. as "Enrolled" and another child, A.C., as Ineligible.  Id., Ex. A at 3.  On the following page, the notice provides standard information about CHIP, the FFM, and the Medically Needy Program.  On that page, the sixth paragraph down states that:

> The Medically Needy program can help pay for Medicaid-covered services.  Individuals enrolled in the Medically Needy Program have income or assets that exceed the limits for regular Medicaid.

A certain amount of medical bills must be incurred each month before Medicaid is approved. This is your "share of cost".

Id., Ex. A at 4. The seventh Medically Needy section begins on page five. It states "Your Medically Needy application/review dated April 07, 2023 is **denied** for the following months" and identifies April and May 2023. Id., Ex A at 5. This section names A.V. and A.C. again and states that they are both ineligible. Id. The Designated Reason provided is: "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM." Id.

The notice also includes one section titled Medicaid, beginning on page five. Id., Ex. A at 5. This section begins with the statement that "Your Medicaid benefits for the person(s) listed below will end on May 31, 2023." Id., Ex. A at 5. A.V. is listed in that section, along with Jennifer V., her husband, and four other children. Id. ¶¶ 2, 10, Ex. A at 5-6. The Designated Reason is: "YOU OR A MEMBER(S) OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR MEDICAID UNDER A DIFFERENT MEDICAID COVERAGE GROUP." Id., Ex. A at 6. Jennifer V. explains that she was confused about the meaning of this Designated Reason and "thought that A.V. should still be on Medicaid because the notice stated that she was in a 'different Medicaid coverage group,' and [Jennifer V.] believed that she was still eligible for Medicaid because she is a one-year-old." Id. ¶ 11. Jennifer V. also thought, based on prior experience, that this phrase "could mean that she was being transferred to a new Medicaid

-17-

managed care plan." Id. Jennifer V. found it confusing that other members of her family were listed in this section "because only two of [her] children, A.V. and N.C., were enrolled in Medicaid as of May 2023. Id. ¶ 12. The notice also includes the State's standard fair hearing information. In her Declaration, Jennifer V. states that she "did not understand the section of the notice about requesting a fair hearing." Id. ¶ 13.

Upon learning that A.V. was uninsured, Jennifer V. and her husband, Henry V., spent time trying to find out what happened and determine whether they could obtain some type of health insurance for A.V. Id. ¶ 14. The fact that A.V. was without insurance and a pediatrician for a time caused Jennifer V. "tremendous stress and anxiety." Id. ¶ 16. Jennifer V. was concerned A.V. "could have a sudden illness or accident," and A.V. also needs insurance "so she can go to her well-child checkup and receive necessary vaccines, including one that she missed because of her loss of Medicaid eligibility." Id.

Significantly, at the outset of this lawsuit, Jennifer V. expressed her belief that their family's income "is below the Medicaid limit for young children and [they] need to get A.V.'s Medicaid reinstated as soon as possible if she is Medicaid eligible." Id.; see also Motion, Ex. 4: A.V. Resp. to Defs.' Interrog. No. 1. Nevertheless, unlike Chianne D., the State did not restore A.V.'s Medicaid coverage following the initiation of this lawsuit. Thus, on December 15, 2023, Jennifer V. and her husband, Henry V. made additional efforts to find health

insurance for A.V.  <u>See</u> A.V. Resp. to Defs.' Interrog. No. 8.  As a result of those efforts, on January 18, 2024, the State issued a notice to Henry V., which, among other things, stated that A.V. was enrolled in Medically Needy and her Share of Cost was increasing from $5,646 to $6,216 as of February 1, 2024.  <u>See</u> Motion, Ex. 2 at ECF p. 5.  The Designated Reason provided is: "Your child(ren) are not eligible for Medicaid due to your family¿s [sic] income, but they may be able to get health insurance through [CHIP]."  <u>See id.</u>  The notice includes information on how to contact CHIP and directs the reader to "[m]ake this call soon since their Medicaid is ending."  <u>Id.</u>  Jennifer V. was confused by this notice in light of prior communications that she had received from CHIP which said that A.V. was not eligible for CHIP and referred her to Medicaid.  <u>See</u> A.V. Resp. to Defs.' Interrog. No. 8.  She was also confused by the reference to Medicaid "ending" since A.V. was not enrolled in Medicaid at that time.  <u>Id.</u> The notice also included references to Jennifer V.'s other children which she found confusing.  <u>Id.</u>

The State did not include in the notice the income standard it had applied to A.V., the number of people it considered to be members of her household, or the amount of income it attributed to A.V.'s household.  <u>See</u> Motion, Ex. 2.  However, after discovery in this lawsuit, Plaintiffs' counsel was able to determine that the State had made an error in calculating the income standard that applied to A.V.  <u>See</u> Motion at 8-9, Exs. 6-7.  As such, with the

assistance of counsel, A.V.'s Medicaid coverage was restored on February 2, 2024.  See Motion, Exs. 6-7.  A.V. will face redetermination of her Medicaid eligibility next year when her continuous coverage ends.

### iii.   Kimber Taylor and K.H.

Plaintiffs also submit evidence regarding the experience of Plaintiffs Kimber Taylor and her infant son K.H.  See Declaration of Kimber Taylor (Doc. 3-12; Taylor Decl.).  Taylor applied for Medicaid in October 2022, after learning she was pregnant and received Medicaid coverage throughout her pregnancy.  See Taylor Decl. ¶ 2.  K.H. was born in May of 2023, and "became active to Medicaid beginning June 2023."  Id. ¶ 3.  According to Taylor, he was "presumptively Medicaid eligible beginning October 1, 2022 as an 'unborn baby.'"  Id.  On April 26, 2023, Taylor received a DCF notice that stated she was eligible for continued Medicaid, and that coverage for her unborn baby would begin "when DCF was notified of the birth . . . ."  Id. ¶ 7.  The notice advised that the baby would "continue to be eligible from 'June 2023 ongoing.'"  Id.  However, on June 8, 2023, Taylor received another notice from the State.  Id. ¶ 8.  This notice stated that Medicaid for both Taylor and her newborn child, K.H., would end on June 30, 2023.  Id. ¶ 8; see also Taylor Notice.  On page two of this notice, in the section titled Cash Assistance, the State includes a sentence that: "We have reviewed your eligibility for full Medicaid benefits and have determined you are not eligible because your income exceeds the limit for

Medicaid." <u>See</u> Taylor Notice at 2.  Taylor "did not understand" this statement. <u>See</u> Taylor Decl. ¶ 9.  The notice does not state what income DCF attributed to Taylor and her "income had not changed since [Taylor and K.H.] were found eligible for Medicaid in April 2023.  <u>Id.</u>

In addition to the Cash Assistance section, the notice contains two Medically Needy sections and one Medicaid section.  In the first Medically Needy section, the notice states that "Your application for Medically Needy dated May 08, 2023 is **approved**.  You are enrolled with an estimated share of cost for" the month of "Jul, 2023 Ongoing."  <u>See</u> Taylor Notice at 2.  This section lists K.H. as Enrolled and Taylor as Ineligible.  The next Medically Needy section states that "Your Medically Needy application/review dated May 08, 2023 is **denied**" for the months of May and June 2023.  <u>Id.</u> at 3-4.  This section lists both K.H. and Taylor as Ineligible.  The Designated Reason is: "YOU ARE RECEIVING THE SAME TYPE OF ASSISTANCE FROM ANOTHER PROGRAM."  <u>Id.</u>  These decisions "made no sense" to Taylor and it was "not clear to [her] what other 'program' the notice was referring to."  <u>See</u> Taylor Decl. ¶ 10.

In the Medicaid section of the notice, it states that "Your Medicaid benefits for the person(s) listed below will end on June 30, 2023."  <u>See</u> Taylor Notice at 5.  Both K.H. and Taylor are listed.  <u>Id.</u>  The Designated Reason is: "YOU OR A MEMBER(S) OF YOUR HOUSEHOLD REMAIN ELIGIBLE FOR

-21-

MEDICAID UNDER A DIFFERENT MEDICAID COVERAGE GROUP." Id. Taylor did not understand what this meant. See Taylor Decl. ¶ 11. Nothing under the Medicaid section references Taylor's income. See Taylor Notice at 5.

It did not make sense to Taylor why DCF had found her and K.H. eligible for Medicaid in April and then changed its position forty days later. See Taylor Decl. ¶ 12. "The notice did not explain what had changed." Id. According to Taylor, she was "extremely upset by the notice saying Medicaid would end," and "[t]he conflicting notices left [her] frustrated and confused." Id. ¶ 13. She did not understand how she, a person who had recently given birth, and her newborn son, could lose Medicaid coverage. Id. ¶ 13.

Taylor called "the DCF office" to ask for an explanation and waited on hold for "at least an hour." Id. ¶ 15. Taylor eventually spoke to someone who told her she was over income, although the staff person knew she had a two-month-old son. Id. ¶¶ 15-16. Taylor had read the section of the notice about her hearing rights, including the warning that she would be required to repay any benefits if the hearing decision was not in her favor. Id. ¶ 17. She "did not appeal because the DCF staff person insisted [she] was over income and did not qualify for Medicaid and [she] didn't want to risk repaying the medical bills." Id. ¶ 17. She was intimidated by the process and assumed she would lose because she was told she was over income, and if she lost "there would be no way [she] could afford to pay back anything." Id. After reading the notices

and talking to DCF staff, she still did not "understand why Medicaid ended for me and my son and if we should appeal." Id. ¶ 18. When she finally understood her rights, she could no longer appeal and request continued benefits during the appeal. Id. ¶ 18.

DCF told Taylor to apply for health insurance in the FFM, but when she did, she was turned down and told to apply for Medicaid. Id. ¶ 19. Her son was referred to CHIP but Taylor was told he was ineligible because he is too young. Id. In late July, an acquaintance helped her sign up for private insurance. Id. ¶ 20. Shortly thereafter, she received a notice from DCF dated August 7, 2023, which states that "[y]our application for Medicaid dated June 29, 2023 is **approved**." See Motion, Ex. 5. Under a section titled "Medicaid" the notice lists Taylor and K.H. as "Eligible" for the months of "Jul, 2023," "Aug, 2023" and "Sep, 2023 Ongoing." Id. Another "Medicaid" section of the notice states that Taylor's June 29, 2023 "Medicaid application/review dated June 29, 2023 is **denied**" and lists Taylor as "Ineligible" for "Jun, 2023." Id. Taylor understood this notice to mean that DCF had found her and K.H. to be eligible for Medicaid and reinstated their coverage. See Taylor Decl. ¶ 20; see also Motion, Ex. 3: Supplemental Declaration of Kimber Taylor (Doc. 85-3; Suppl. Taylor Decl.) ¶ 1.

In her Supplemental Declaration, Taylor explains that she is pregnant again, and as such, although she has private insurance, she reapplied for

Medicaid on January 16, 2024. <u>See</u> Suppl. Taylor Decl. ¶ 3. As of February 16, 2024, DCF had not processed this application. <u>Id.</u> ¶ 4. Taylor visited her doctor for pregnancy care in late January, and on February 7, 2024, she received a bill for $100. <u>Id.</u> ¶ 5. According to Taylor, "[t]he original cost of the appointment was $370" so she assumes that the $100 is the balance after an insurance discount and payment from her private insurance. <u>Id.</u> The fact that Medicaid did not pay this balance causes her to believe that, contrary to her understanding of the August notice, she is not currently enrolled in Medicaid. <u>Id.</u> At the time of her February 16, 2024 Supplemental Declaration, Taylor remained "completely confused about the status of my Medicaid eligibility and whether it should have continued from June 2023 (when I received the notice terminating coverage for K.H. and me) through May 2024 (which is the end of my 12-month postpartum Medicaid eligibility period)." <u>Id.</u> ¶ 7. Taylor states that she is anxious due to the lack of full health coverage during her pregnancy. <u>Id.</u>

## II.    Underlying Claims[8]

Plaintiffs, on behalf of themselves and others similarly situated, challenge the constitutional and statutory adequacy of the written notices the

---

[8] Because it will aid in the analysis of the Rule 23 factors, the Court first summarizes the law applicable to the claims raised in this action. The Court need not and does not express any opinion on whether Plaintiffs will be able to prevail on these claims.

State uses to inform Medicaid beneficiaries of the termination of their benefits. In Count I, Plaintiffs contend that the State's notices fail to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.  See FAC at 41-42.  In Count II, Plaintiffs allege that the State's notices violate the requirements of the Medicaid Act, 42 U.S.C. § 1396a(a)(3).  Id. at 42-43.  As to both Counts, Plaintiffs seek relief pursuant to 42 U.S.C. § 1983.  Id. at 42-43. Based on these claims, Plaintiffs request entry of a declaratory judgment that the State's notices communicating Medicaid ineligibility violate the Due Process Clause and the Medicaid Act.  Id. at 43-44.  Plaintiffs also request permanent injunctive relief prohibiting the State from continuing its allegedly inadequate notice practices and prospectively reinstating Medicaid coverage to all Plaintiffs and affected class members "until timely and legally adequate notice of termination has been provided to them."  Id. at 44.

**A. Due Process**

In Count I of the Amended Complaint, Plaintiffs assert that the State has deprived them of their right to due process in violation of the Fourteenth Amendment.  See FAC at 41.  The standard for a constitutional violation under the Due Process Clause is well known:

> There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950).

Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  To state a claim under § 1983 for denial of procedural due process, a plaintiff must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  Id. (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)).  In this case, it is undisputed that Plaintiffs have a constitutionally protected property interest in their Medicaid benefits, and that they were deprived of that interest when the State terminated those benefits.  Thus, the issue in resolving this claim will be whether the State provided constitutionally-inadequate process.

"To determine what type of notice is adequate to satisfy the Due Process Clause," the Eleventh Circuit instructs courts to apply the test set forth in Mullane.  See Arrington v. Helms, 438 F.3d 1336, 1349 (11th Cir. 2006).  Under this standard, "notice must be 'reasonably calculated, under all the circumstances, to apprise intended parties of the pendency of the action and afford them an opportunity to present their objections.'"  Id. at 1349-50 (quoting Mullane, 339 U.S. at 314).  Significantly, "[d]ue process is a flexible concept that varies with the particular circumstances of each case, and myriad forms of notice may satisfy the Mullane standard."  Id.  The question is not whether the notice is "ideal under all the circumstances, but rather whether the notice [Plaintiffs] currently receive is reasonable under all the circumstances."  Id. at 1350.  Moreover, the relevant question "is not whether

a particular individual failed to understand the notice but whether the notice is reasonably calculated to apprise intended recipients, as a whole, of their rights." See Jordan v. Benefits Review Bd of U.S. Dep't of Labor, 876 F.2d 1455, 1459 (11th Cir. 1989).

## B. Medicaid Act

In Count II of the Amended Complaint, Plaintiffs allege that the State's termination notices violate the Medicaid Act, specifically 42 U.S.C. § 1396a(a)(3). See FAC at 42. This section provides that: "A state plan for medical assistance must-- . . . (3) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under this plan is denied or is not acted upon with reasonable promptness; . . . ." See 42 U.S.C. § 1396a(a)(3) (emphasis added).

The regulations that implement this provision require that "[a]t the time the agency denies an individual's claim for eligibility, benefits or services," the agency must:

inform every applicant or beneficiary in writing—

(1) Of his or her right to a fair hearing and right to request an expedited fair hearing;
(2) Of the method by which he may obtain a hearing;
(3) That he may represent himself or use legal counsel, a relative, a friend, or other spokesman; and
(4) Of the time frames in which the agency must take final administrative action, in accordance with § 431.244(f).

42 C.F.R. § 431.206(b)-(c).  In addition, pursuant to 42 U.S.C. § 431.210, this notice "must contain—(a) A statement of what action the agency . . . intends to take and the effective date of such action; [and] (b) A clear statement of the specific reasons supporting the intended action; . . . ."  See 42 U.S.C. § 431.210(a)-(b).  The regulations further require that the notice include "[t]he specific regulations that support . . . the action," as well as an explanation of the right to request a hearing and "the circumstances under which Medicaid is continued if a hearing is requested."  See id. § 431.210(c)-(e).

## III.   Motion to Dismiss

In the Motion to Dismiss, the State contends that the claims of Chianne D. and C.D. are due to be dismissed for lack of standing.  As to C.D., the State argues that from the outset of this lawsuit, C.D. has not been enrolled in Medicaid and has not claimed to be eligible for Medicaid.  As such, the State contends that C.D. lacks standing to pursue the claims raised in this action which seek only prospective relief.  With regard to Chianne D., the State asserts that her claims are now moot because her postpartum eligibility for Medicaid has ended, such that she is no longer enrolled in or eligible for Medicaid and does not claim to be currently entitled to Medicaid benefits.  The State's position is that "[b]ecause Chianne [D.] and C.D. suffer no legally cognizable harm that prospective relief would redress, their claims are not justiciable and should be dismissed."  See MTD at 2.  In their Response,

Plaintiffs maintain that C.D. has standing based on her demand for reinstatement pending receipt of adequate pretermination notice, and that Chianne D.'s claims fall within the inherently transitory exception to mootness. See Response to MTD at 3-4, 6-8.

Upon review, the Court finds that it need not resolve these arguments. For the reasons set forth below, the Court will modify the class definition to more accurately reflect the class encompassed by the claims raised in this lawsuit. Under the Court's modified class definition, as the Court explains, Plaintiffs A.V., Taylor, and K.H. have standing to pursue the claims of the class and the subclass. As such, the Court need not determine whether Chianne D. and C.D. have standing to pursue the claims for declaratory and injunctive relief raised in this action. See Glassroth v. Moore, 335 F.3d 1282, 1293 (11th Cir. 2003) ("Having concluded that those two plaintiffs have standing, we are not required to decide whether the other plaintiff . . . has standing."); Am. Iron & Steel Inst. v. Occupational Safety & Health Admin., 182 F.3d 1261, 1274 n.10 (11th Cir. 1999); Tershakovec v. Ford Motor Co., Inc., 79 F.4th 1299, 1327 (11th Cir. 2023) (Tjoflat, J., concurring in part and dissenting in part) ("For forward-looking relief, only one plaintiff need show an actual injury because, with injunctive relief, whether the suit is brought by one plaintiff or one million plaintiffs, the injunction preventing future conduct remains the same."); see also Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31

-29-

F.4th 651, 682 n.32 (9th Cir. 2022) ("[T]he Supreme Court has long recognized that in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III." (collecting cases)); Martin v. Kemp, 341 F. Supp. 3d 1326, 1333 (N.D. Ga. 2018) ("Where only injunctive relief is sought, only one plaintiff with standing is required."). Accordingly, the Court will deny the Motion to Dismiss as moot, and turn to the question of class certification.

## IV.   Class Certification

### A. Applicable Law

Pursuant to Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1187-88 (11th Cir. 2003); Rule 23(a)(1)–(4). These four requirements "are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." Piazza v. Ebsco Inds., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982)). The party seeking class certification must establish these four prerequisites to class certification, commonly referred to as the

"numerosity, commonality, typicality, and adequacy of representation" requirements, as well as one of the alternative requirements set forth in Rule 23(b). See Valley Drug, 350 F.3d at 1188. "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." Id.  Here, Plaintiffs seek certification of a Rule 23(b)(2) class, such that they must also show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  See Rule 23(b)(2).  In addition, the Eleventh Circuit Court of Appeals instructs that all classes "must present a named plaintiff who has standing to bring the claim" and "must be 'adequately defined and clearly ascertainable.'"  See AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co., 938 F.3d 1170, 1174 (11th Cir. 2019) (quoting Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)).[9]

### B. Standing

Prior to analyzing whether class certification is appropriate, the Court addresses the threshold question of whether any individual plaintiff has

---

[9] The Court notes that some district courts have questioned whether the ascertainability requirement applies to classes certified under Rule 23(b)(2). See Braggs v. Dunn, 317 F.R.D. 634, 671-72 (M.D. Ala. 2016); Jones v. Desantis, No. 4:19cv300-RH/MJF, 2020 WL 5646124, at *5-6 (N.D. Fla. Apr. 7, 2020).  The Court need not address this issue because as discussed below, the class certified here is ascertainable.

constitutional standing to raise the claims asserted in this action.  See Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987) ("Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.").  At the class certification stage, all that is required is that "at least one named class representative has Article III standing to raise each class claim."  See Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000); Cordoba v. DirecTV, LLC, 942 F.3d 1259, 1273 (11th Cir. 2019).  Notably, the State does not challenge the standing of Plaintiffs A.V., Taylor, or K.H. to assert the claims raised in this action.[10]  Nevertheless, because standing "implicates the Court's jurisdiction to order the requested relief," the Court must consider A.V., Taylor, and K.H.'s standing "even in the absence of an express challenge by [the State]." See Anderson v. Garner, 22 F. Supp. 2d 1379, 1387-88 (N.D. Ga. 1997).  Upon review, the Court has no difficulty concluding that these Plaintiffs have standing to bring the claims they raise in this action.

---

[10] To the extent the State argues that Plaintiffs lack "standing" to challenge the adequacy of reason codes they did not personally receive, the Court finds this issue is not one of standing but rather whether Plaintiffs' claims are typical of the class they seek to represent.  As such, the Court will address this argument in its analysis on typicality.  See Response at 18-19.

To establish standing a plaintiff must show three elements: (1) that she or he has suffered an "injury-in-fact," (2) that there is a "causal connection between the asserted injury-in-fact and the challenged action of the defendant," and (3) that a favorable decision by the court will redress the injury.  See Shotz v. Cates, 256 F. 3d 1077, 1081 (11th Cir. 2001) (internal citations omitted). "These requirements are the 'irreducible minimum' required by the Constitution for a plaintiff to proceed in federal court." Id. at 1081 (quoting Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 664 (1993)) (internal citations omitted). Additionally, in an action for injunctive relief, a plaintiff has standing only if the plaintiff establishes "a real and immediate–as opposed to a merely conjectural or hypothetical–threat of future injury."  See Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F. 3d 1262, 1284 (11th Cir. 2001).  A complaint that includes "only past incidents" is insufficient to allege a real and immediate threat of future injury.  See Shotz, 256 F. 3d at 1081.

Plaintiffs assert that prior to the termination of their Medicaid benefits, they received a notice from the State which they found confusing and difficult to understand.  They present evidence that the alleged deficiencies in the notice deprived them, or their caregivers, of the ability to understand that their benefits were being terminated and the reasons why, and to challenge that decision prior to losing coverage.  See Jennifer V. Decl. ¶¶ 8, 11, 13; Taylor

Decl. ¶¶ 9-13, 17-18.  They assert that they, or their caregivers, lost time trying to understand the notice and restore coverage, and suffered emotional distress from the loss of benefits.  And, following the loss of their Medicaid benefits, Plaintiffs incurred medical expenses.  See Jennifer V. Decl. ¶ 15; Taylor Decl. ¶ 5; A.V. Resp. to Defs.' Interrog. No. 7.  Significantly, A.V., K.H., and Taylor maintain that the State's termination decision was in error and that they are currently eligible for Medicaid.  Based on the foregoing, if this were an action for damages, Plaintiffs would undoubtedly have standing to assert their claims based on their concrete injuries in the form of lost time, emotional distress, and medical bills traceable to the confusing termination notices.  See Losch v. Nationstar Mortg. LLC, 995 F.3d 937, 943 (11th Cir. 2021) (identifying emotional distress, including stress and anxiety, as well as wasted time as concrete injuries).  However, the relief sought here is prospective in nature, so the Court must determine whether Plaintiffs have shown "a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future."  See Wooden, 247 F.3d at 1283.

As to A.V., the alleged wrongful deprivation of her Medicaid benefits was ongoing at the outset of this lawsuit.  Thus, at the time she initiated this case, A.V. had standing to seek injunctive relief concerning this ongoing deprivation.  Although the State has recently reinstated A.V.'s benefits, the State does not argue that A.V.'s claims are moot, and the Court finds no mootness problem

here.  A.V. is subject to the redetermination of her Medicaid eligibility in the coming year.  Given the State's ongoing use of the challenged notices, A.V. faces a substantial threat of future injury from the receipt of another allegedly inadequate termination notice when her Medicaid coverage is redetermined at that time.  As to K.H., his benefits were reinstated prior to joining this lawsuit.  However, as with A.V., he faces the same threat of future harm from an allegedly inadequate notice when his benefits are redetermined.  With regard to Taylor, she remains confused about whether her Medicaid benefits have been restored.  See Suppl. Taylor Decl. ¶ 7.  She continues to assert her eligibility for such benefits and is anxious about not having full healthcare coverage.  See id. ¶ 7.  These are ongoing injuries.

Plaintiffs' injuries are traceable to the alleged inadequacy of the notices and redressable through declaratory and injunctive relief requiring the State to reinstate benefits (as to Taylor) and prohibiting the State from terminating such benefits in the future without adequate notice.  The Court is satisfied that A.V., K.H. and Taylor have standing to assert the claims for prospective relief raised in this action.

### C. Is the Class Adequately Defined and Clearly Ascertainable?

"Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class

satisfies the enumerated prerequisites of Rule 23(a)."  See Cherry v. Dometic Corp., 986 F.3d 1296, 1302 (11th Cir. 2021).  In Cherry, the Eleventh Circuit explained that "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination."  Id. at 1304.[11]  In contrast, "[a] class is inadequately defined if it is defined through vague or subjective criteria."  Id. at 1302.  Significantly, the Court has discretion to determine the contours of the class definition.  See Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930-31 (11th Cir. 1983) ("It is within the district court's discretion . . . to undertake and shape the . . . class . . . as it deems proper.").

In the Motion, Plaintiffs propose the following class definition:

All Florida Medicaid enrollees who are members of either of the two subclasses listed below and who on or after March 31, 2023, have been or will be found ineligible for Medicaid coverage.

**Subclass A**: Individuals issued a written notice that includes no reason code or only uses reason code(s) that do not identify the eligibility factor(s) Defendants relied on to determine the individual is ineligible for Medicaid.  For purposes of this definition, eligibility factors are age, residency, income, assets or other non-cash resources, receipt of Social Security Administration benefits, Medicare enrollment, citizenship, immigration status, or Social Security Number, disability status, pregnancy, and incarceration status.

**Subclass B**: Individuals issued a written notice that relies on a reason code that states the individual or household is over income for Medicaid eligibility but does not identify the household income

---

[11] The Cherry court discussed the requirements for class certification in the context of a request for certification under Rule 23(b)(3).  Id. at 1300.

> used in the eligibility determination or the applicable income standard.

<u>See</u> Motion at 1-2.

At the December 13, 2023 hearing in this case, <u>see</u> Minute Entry (Doc. 62), the Court expressed concern that Plaintiffs' proposed definition of Subclass A was vague and confusing.  <u>See</u> Transcript of Preliminary Injunction Hearing (Doc. 64; Tr.) at 98-99.  The Court continues to bear some reservation about the clarity of this definition.  Nevertheless, the Court need not determine whether the proposed Subclasses are adequately defined because, for the reasons discussed below, the Court exercises its discretion to modify the class definition.  <u>See</u> <u>A.M.C. v. Smith</u>, 620 F. Supp. 3d 713, 726 (M.D. Tenn. 2022) (explaining that courts have discretion "to trim and refine collective actions such that dysfunctional elements do not contaminate otherwise functional classes"); <u>Dozier v. Haveman</u>, No. 2:14-cv-12455, 2014 WL 5483008, at *15 (E.D. Mich. Oct. 29. 2014) (collecting cases for proposition that the court has discretion to <u>sua sponte</u> modify class definition); <u>Barry v. Corrigan</u>, 79 F. Supp. 3d 712, 730 (E.D. Mich. Jan. 9, 2015) (exercising its authority to <u>sua sponte</u> modify class definition).[12]

---

[12] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

To warrant certification, a class, and a Rule 23(b)(2) class in particular, must be sufficiently cohesive.  See Barnes v. Am. Tobacco Co., 161 F.3d 127, 142-43 (3d Cir. 1998); see also Scott v. City of Anniston, Ala., 682 F.2d 1353 (11th Cir. 1982) (referencing the "cohesive characteristics of the class" as the "vital core of a (b)(2) action").  Indeed, "[s]ubsection (b)(2) 'by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members' grievances, rights and interests.'"  See Holmes v. Continental Can Co., 706 F.2d 1144, 1155 & n.8 (11th Cir. 1983) (quoting Gerald E. Rosen, Title VII Classes and Due Process: To (b)(2) Or Not To (b)(3), 26 Wayne L. Rev. 919, 923 (1980)).  Here, Plaintiffs seek to represent a class of individuals in Subclass A whose Medicaid coverage may have ended for any number of reasons and who received notices with a variety of different Designated Reasons.  Plaintiffs attempt to form a cohesive class out of this group by pointing to their shared right to adequate notice and their shared receipt of termination notices with similar Designated Reasons.  However, the Court is not convinced that this broad shared characteristic alone creates a cohesive class as to the claims brought in this action.

Significantly, there is very little in the record that addresses the circumstances in which the State uses the variety of Designated Reasons encompassed by Plaintiffs' proposed Subclass A.  Indeed, although the named Plaintiffs received notices with different Designated Reasons, they were all

found ineligible for one reason—income that exceeds the limit for full Medicaid. Moreover, whether a notice with a particular Designated Reason is adequate may well depend on the reason for the termination and the other information contained in the notice. See A.M.C., 620 F. Supp. 3d at 736 (declining to certify a class on the issue of whether termination notices provided sufficiently detailed and clear statements of the reasoning where class included members terminated for many different reasons). Thus, the Court is not persuaded that similarity of Designated Reasons alone is a sufficient unifying characteristic on which to form a cohesive class in light of the circumstances and claims raised in this case. However, this flaw is easily remedied by redefining and limiting the proposed classes to center on the shared characteristic demonstrated by the named Plaintiffs in this case—termination of continued Medicaid benefits on the basis of income.

The record reflects that all termination notices based on income contain uniform omissions such as the lack of individualized income information and income standards. As such, the Court will certify a single class to resolve the issue of whether termination notices which lack this information are adequate to satisfy the requirements of due process and the Medicaid Act when the enrollee is found ineligible based on income. In addition to these uniform omissions, some notices reflect an additional omission in the lack of a Designated Reason identifying income as the basis for the ineligibility

determination.  As such, the Court finds it appropriate to certify a subclass encompassing individuals who received this form of notice.  As discussed in the commonality section below, more narrowly defined in this way the class (and the subclass) is sufficiently cohesive to permit classwide answers to the claims raised in this action and, if warranted, allows for classwide injunctive relief that is specific enough to satisfy the requirements of Rule 65.  The Court's modified class definition is as follows:

> **Class:** All Florida Medicaid enrollees who on or after March 31, 2023, have been or will be found ineligible for Medicaid coverage based on a finding that the individual or household has income that exceeds the threshold for Medicaid eligibility, and were issued a written notice that does not identify the individualized income used in the eligibility determination or the income standard applied.

> **Subclass**: Members of the class whose written notice does not provide a Designated Reason or includes only Designated Reasons that do not identify income as the factor on which the State relied in finding the individual to be ineligible for Medicaid.

The Court is satisfied that both the modified class and the subclass are adequately defined as each is based on specific and objective criteria—the reason the individual was terminated from Medicaid, and the Designated Reason in the notice.[13]  For the same reason, the Court is satisfied that this

---

[13] In the Response, the State argues that this case concerns Medicaid <u>termination</u> notices only, as distinct from Medicaid <u>denial</u> notices.  <u>See</u> Response at 16.  Plaintiffs do not respond to this argument in their Reply.  The Court notes that Plaintiffs' proposed class encompasses Medicaid <u>enrollees</u> who were found ineligible for Medicaid during the unwinding.  <u>See</u> Motion at 1.  And indeed, the Amended Complaint is framed as a challenge

Class is ascertainable.  Having made the eligibility determinations and issued the termination notices, the State will be able to identify the class members with the data in its possession.  Nevertheless, to the extent further developments in the case demonstrate that this class definition requires modification, the Court retains the power to alter or amend the class definition at any time prior to a decision on the merits.  See Carriuolo v. Gen. Motors Co., 823 F.3d 977, 988 (11th Cir. 2016); Rule 23(c)(1)(C).

In light of the Court's modification to the class definition, the Court need not address the State's arguments that Plaintiffs' proposed definition of Subclass A is unclear—the Court has eliminated the problematic language. See Response at 10.  Likewise, to the extent the State argues that no Plaintiffs with live claims are members of the proposed Subclasses, see id. at 15, the Court's modified class definition resolves that issue because A.V., K.H., and Taylor are members of the Class and Subclass as defined by the Court.  And, as explained above, because at least one named Plaintiff has standing to represent the Class and Subclass, the Court need not resolve the State's

---

to the termination of "tens of thousands of Floridians from Medicaid coverage without providing them adequate individualized written notice of the reason for the termination and the opportunity for a pre-termination fair hearing . . . ."  See FAC ¶ 1 (emphasis added).  As such, the Court agrees that this case is a challenge to Medicaid termination notices and, consistent with Plaintiffs' proposed class, limits the class to Medicaid enrollees who the State found to be ineligible for continued Medicaid benefits after the start of the unwinding.

challenge to Chianne D. and C.D.'s standing.  Thus, the Court turns next to the State's argument that the class definition is overbroad.  Id. at 12.

The State contends that the class is overbroad because it, according to the State, contains "many members who suffered no injury."  See Response at 12.  The State argues that many class members are in fact ineligible for continued Medicaid benefits and contends that those individuals are not injured.  In the State's view, such individuals suffered only "a bare procedural violation" which "is not, without more, a concrete injury . . . ."  Id. at 14.  The State maintains that "[i]nadequate notice inflicts no concrete, real-world harm on recipients absent some basis to contest the government's decision."  Id. at 14.  Thus, according to the State, the proposed class is overbroad because "Plaintiffs have not established that the challenged notices caused any appreciable number of class members to suffer a concrete injury."  Id.  In the State's view, Plaintiffs must show that "a sizeable percentage of class members have reason to dispute DCF's termination decisions."  Id.

Upon review, the Court finds this argument to be unavailing.[14]  The class here is limited to individuals who have been or will be subjected to the State's

---

[14] Notably, the State's argument entirely fails to account for the concrete harms that class members sustain from the confusion, lost time, and emotional distress that stem from inadequate notice of the termination of benefits, even where the termination decision is ultimately correct.  If Plaintiffs prevail on the merits of their claims, injunctive relief may be appropriate to prevent those harms as to members of the class whose Medicaid benefits will be terminated in the future.  Indeed, such harms are otherwise irreparable in light of the State's Eleventh Amendment immunity.

allegedly unlawful notice practices prior to the termination of their Medicaid benefits. "If Plaintiffs are able to prove that these . . . practices exist and are in violation of the law, then each class member will have suffered at least some measure of the same harm." See J.M. ex rel. Lewis v. Crittenden, 337 F.R.D. 434, 449 (N.D. Ga. Sept. 27, 2019); see also Dozier, 2014 WL 5483008, at *22 (rejecting argument that class members who all received the same allegedly inadequate notice were not "uniformly injured"). Indeed, all class members are entitled to adequate notice prior to the deprivation of their Medicaid benefits regardless of the substantive correctness of the ineligibility determination. See Carey v. Piphus, 435 U.S. 247, 266 (1978) (holding that the denial of procedural due process is actionable even "without proof of actual injury"); Fuentes v. Shevin, 407 U.S. 67, 87 (1972) ("'To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merit.'"). And if the State's notices are constitutionally or statutorily inadequate, then they are inadequate as to all class members. For purposes of a Rule 23(b)(2) class, this is sufficient. See Barry v. Lyon, 834 F.3d 706, 722 (6th Cir. 2016); Ortiz v. Eichler, 616 F. Supp. 1046, 1058 (D. Del. 1985) ("It is irrelevant that not all class members have been affected by all of the challenged practices. . . . Indeed, other courts considering class action challenges to public assistance practices have found the actions to

be appropriate for treatment under Rule 23(b)(2)." (collecting cases)); Lightfoot

v. District of Columbia (Lightfoot I), 246 F.R.D. 326, 336, 337 (D.D.C. Nov. 15,

2007) ("Plaintiffs do not need to demonstrate that particular individuals were

deprived due process but rather that, as applied to the class as a whole, the

[challenged law] did not afford adequate due process."); see also Kapps v. Wing,

404 F.3d 105, 116-17 (2d Cir. 2005) ("[I]n cases involving the termination of

benefits, federal courts do not ask whether the plaintiffs are entitled to the

continuation of benefits, or whether they are, as the agency found, no longer

eligible.  Instead, the focus of the federal courts is on the adequacy of the

procedures used to make that determination.").

Moreover, contrary to the State's position, this case does not concern

"bare procedural violations."  The procedural rights afforded to the class

members are to protect their concrete interest in their Medicaid benefits.  See

Lujan v. Defenders of Wildlife, 504 U.S. 555, 572 (1992).  And the purported

deficiencies identified in this case are substantial, posing a material risk of

harm to those interests.  But even to the extent the procedural injuries would

not suffice to establish an injury-in-fact for some class members, Plaintiffs are

not required to establish that all class members have standing in order to

obtain classwide injunctive and declaratory relief.  As to Rule 23(b)(2) class

actions, "it is well settled" that "the standing inquiry focuses solely on the

named plaintiff or proposed class representative."  See 1 Newberg and

Rubenstein on Class Actions § 2:3 (6th ed.).  Indeed, the advisory committee notes to Rule 23(b)(2) explain that this subdivision is intended to "reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate."  See Rule 23(b)(2), adv. comm. note to 1966 amend.  The Rule does not require "'that the party opposing the class . . . act directly against each member of the class.  The key is whether his actions would affect all persons similarly situated so that his acts apply generally to the whole class.'"  See Anderson v. Garner, 22 F. Supp. 2d 1379, 1386 (N.D. Ga. 1997) (alteration in original) (quoting 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil § 1775 (2d ed. 1986)).  As such, "'[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for one or more of them to seek relief under Rule 23(b)(2).'"  Id. (quoting Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978)).  Because the claims here are premised on uniform practices applicable to the modified Class as a whole, the Court rejects the State's argument that Plaintiffs also must demonstrate that all or most class members suffered an injury-in-fact from the challenged practice.  As explained above, where prospective relief is sought, only one Plaintiff need have standing

to pursue the claim.  As such, the fact that some class members may not be eligible for continued benefits does not preclude class certification here.

### D. Numerosity

The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their number and all other relevant factors.  Phillips v. Joint Legis. Comm., 637 F.2d 1014, 1022 (5th Cir. Unit A Feb. 1981).[15]  "[T]he focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'"  Bacon v. Stiefel Lab., Inc., 275 F.R.D. 681, 690 (S.D. Fla. 2011) (quoting Armstead v. Pingree, 629 F. Supp. 273, 279 (M.D. Fla. 1986)); Leszczynski v. Allianz Ins., 176 F.R.D. 659, 669 (S.D. Fla. 1997) (The numerosity requirement "does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient.").  Factors to be considered are the geographic dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses.  Id.  "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class."  Evans, 696 F.2d at 930.

---

[15] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Instead, a plaintiff is required to "show some evidence of or reasonably estimate the number of class members" beyond "[m]ere speculation, bare allegations, and unsupported conclusions." Barlow v. Marion Cnty. Hosp. Dist., 88 F.R.D. 619, 625 (M.D. Fla. 1980); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009). "In general terms, the Eleventh Circuit has found that 'less than twenty-one [prospective class members] is inadequate [while] more than forty [is] adequate.'" See Bacon, 275 F.R.D. at 690 (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)); see also Vega, 564 F.3d at 1267 (noting that the court has affirmed certification of a class of "'at least thirty-one individual class members'" and has also affirmed a district court's finding that a class of 34 did not satisfy the numerosity requirement). "[W]here the question of numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1)." Leszczynski, 176 F.R.D. at 670 (citing Evans, 696 F.2d at 930).

The record contains evidence that from the outset of the unwinding process until December 2023, "102,080 enrollees received a Notice of Case Action that denied or terminated Medicaid coverage" and included at least one Designated Reason identifying income as the basis for the decision. See Declaration of Daniel Davis (Doc. 76-1; Davis Decl.) ¶ 3. And the State does not dispute that its notices uniformly "do not provide the applicable income

limit or the calculation of an individual's income." <u>See</u> Answer ¶ 75. Thus, the Court is satisfied that the full Class, which includes anyone terminated on the basis of income regardless of the Designated Reason provided, is sufficiently numerous to satisfy the numerosity requirement.

As to the Subclass, the record shows that at least "771,043 [Medicaid] enrollees received a Notice of Case Action that used only one or more of the following three reason codes: 227, 249, 520." <u>See</u> Davis Decl. ¶ 4.[16] Of this total, "284,779 remained without full Medicaid coverage in December 2023." <u>Id.</u> The record does not reflect what portion of these individuals were found ineligible due to income, but the notices sent to A.V., K.H., and Taylor demonstrate that the State does use these broad Designated Reasons in termination notices where income is the underlying basis for the decision. The State does not contend that the use of these broad Designated Reasons in the notices sent to A.V., K.H., and Taylor was a mistake or an anomaly. As such, the Court is satisfied that even if only a small percentage of those 771,043 enrollees were terminated on the basis of income, as in the cases of A.V., K.H., and Taylor, the numerosity as to the Subclass is met.

---

[16] These numbers correlate to the following reason codes:
  227 – "We reviewed your case, you are still eligible for Medicaid, but in a different Medicaid coverage type."
  249 – "You are receiving the same type of assistance from another program."
  520 – "Your Medicaid for this period is ending."
<u>See</u> Highlighted Reason Codes (Doc. 47-3).

Moreover, the Court finds that the numerosity requirement is met because joinder of the putative class members is impracticable for other reasons as well. The class members are geographically dispersed across the state of Florida and are, by definition, vulnerable members of the population with limited resources. See Crawley v. Ahmed, No. 08-14040, 2009 WL 1384147, at *11 (E.D. Mich. May 14, 2009) (finding the numerosity factor was supported by the fact that most of the class members "have little to no income, which most likely makes it difficult to sue on their own"). The class proposed here also includes future recipients of inadequate termination notices. Joinder of such individuals is "certainly impracticable" given that they are as yet unidentifiable. See Phillips, 637 F.2d at 1022; see also Armstead v. Pingree, 629 F. Supp. 273, 279 (M.D. Fla. 1986). Thus, upon consideration of all relevant factors, the Court finds the numerosity requirement is satisfied.

### E. Commonality

The commonality requirement demands that there be questions of law or fact common to the class. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). In this way, "commonality" "measures the extent to which all members of a putative class have similar claims." Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006). Commonality exists if a class action involves "issues that are susceptible to class wide proof." Murray v. Auslander, 244 F.3d 807,

811 (11th Cir. 2001). The requirement is satisfied "where plaintiffs allege common or standardized conduct by the defendant directed toward members of the proposed class." Elkins v. Equitable Life Ins. of Iowa, No. CivA96-296-Civ-T-17B, 1998 WL 133741, *11 (M.D. Fla. Jan. 27, 1998). As such, the putative class plaintiffs' claims must depend upon a common contention of such a nature that it is capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 349-50. Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Id. (citation omitted); see also id. at 353 (quoting Falcon, 457 U.S. at 157–58).

As set forth above, Plaintiffs have demonstrated that the State has uniform notice practices where the termination of benefits is based on income. Plaintiffs have shown common alleged flaws in the omission of certain types of information from all such notices, and an additional alleged flaw in a subset of such notices where the Designated Reason does not identify income as the basis of the termination decision. Thus, the Court is satisfied that this case involves common or standardized conduct by the State directed toward Medicaid enrollees whose benefits are terminated based on income.

The problem with Plaintiffs' class definition as proposed, however, is that Subclass A encompasses individuals whose Medicaid benefits were

terminated for any reason whatsoever so long as their notice lacked a sufficiently specific Designated Reason.  But, the record contains very little evidence concerning those notices such that the Court cannot determine whether termination notices premised on other eligibility factors are materially the same as the income-based termination notices in the record here.  Moreover, to resolve the class claims, the Court must consider the adequacy of the notice in its entirety and under the totality of the circumstances which includes the underlying reason for the termination.  See Mathews v. Eldridge, 424 U.S. 319, 336 (1976) ("As [the plaintiff's] benefits were terminated because he was determined to be no longer disabled, we consider only the sufficiency of the procedures involved in such cases."); Lightfoot v. Dist. of Columbia (Lightfoot II), 273 F.R.D. 314, 332 (D.D.C. 2011) (explaining that differences in the reason for termination may affect the question of whether the timeframe in which the notice was provided was constitutionally adequate).

Because the class as proposed includes individuals terminated for any number of reasons, the Court is not persuaded that Plaintiffs' claims are capable of classwide resolution as to the entirety of the proposed Subclass A. Significantly, this is not a case concerning whether the State must provide notice at all.  Compare Hernandez v. Medows, 209 F.R.D. 665, 671 (S.D. Fla. 2002).  Nor is this a case where the challenged notices are exactly the same.

Compare <u>J.M. ex rel. Lewis</u>, 337 F.R.D. at 442 ("The letters from Defendants informing Plaintiffs that they would be losing Medicaid coverage are all identical, except for the dates and the addresses.").  The central question in this case concerns what information and degree of detail must be included in a Medicaid termination notice to satisfy the Due Process Clause and the Medicaid Act.  Indeed, in the Reply, Plaintiffs assert that the "glue" that holds the class together is the uniform omission of "any case-specific information that explains the basis for Defendants' eligibility determination such as the income, household size, and income standard used or description of the relevant eligibility categories and requirements."  <u>See</u> Reply at 1.  The Court agrees that this glue holds together a class of individuals who were found ineligible for Medicaid <u>based on income</u>.  But the answer to the question of what degree of detail the law requires in a termination notice across all possible reasons is unlikely to be the same.  <u>See</u> <u>Lightfoot II</u>, 273 F.R.D. at 332 (explaining that differences in the reason for termination may affect the question of whether the timeframe in which the notice was provided was constitutionally adequate).

Broadly speaking, Plaintiffs' proposed Subclass A does share one common question—whether a notice which does not contain a Designated Reason or relies on a Designated Reason that does not refer to any eligibility factor is sufficient under the Due Process Clause or Medicaid Act.  And it may

be that there is a common answer to that question.[17]  But even if Plaintiffs can prevail in establishing that such notices are always inadequate, the relief Plaintiffs seek goes far beyond merely prohibiting the State from using the challenged Designated Reasons.   Plaintiffs ask the Court to "prospectively reinstate Medicaid coverage to Plaintiffs and all affected class members until timely and legally adequate notice of termination has been provided to them." See FAC at 44.  However, as explained at the hearing, the Court cannot simply order the State to obey the law by providing "adequate notice."  See Tr. at 113-14.  If Plaintiffs succeed in showing that they are entitled to injunctive relief, the Court must determine and define what constitutes adequate notice.  See Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1531 (11th Cir. 1996) ("Because of the possibility of contempt, an injunction 'must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law.'" (quoting Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 771 (3d Cir. 1994))).  After the Court directed Plaintiffs to specify the injunctive relief they sought during a preliminary phase of these proceedings, Plaintiffs submitted

---

[17] Although perhaps not.  For example, the record shows that the State uses the Designated Reason "Your Medicaid For This Period is Ending" when the termination notice "'is following prior notices . . . advising the individual to perform a certain action.'"  See FAC ¶ 78 (alteration in original); Answer ¶ 78.  While the Court expresses no opinion on the merits, it is not difficult to conceive that the law may differ on whether this Designated Reason is sufficient in that circumstance as opposed to in a notice where the termination decision is based on substantive criteria.

an Amended Proposed Order which includes directives that the State must

include in its notices:

> i.   A statement identifying the Medicaid category under which the household member was previously eligible;
> ii.  A list of the eligibility standard(s) for the category under which the household member was previously eligible, including a statement of the income limit for the applicable household size (or a statement that the category has no income requirements);
> iii. The eligibility standard(s) that DCF determined the household member does not meet;
> iv.  The factual information DCF used to reach its determination; and
> v.   A statement that DCF found the individual ineligible in any other Medicaid category, and a general description of what the other eligibility categories are.

See Amended Proposed Order on Plaintiffs' Motion for a Classwide

Preliminary Injunction (Doc. 69) at 2-3.  The Court expresses no opinion on

whether this specific information is necessary in a notice terminating Medicaid

benefits on the basis of income.  But determining whether this information is

necessary in a notice terminating benefits based on other criteria, such as

citizenship, residency, or incarceration status, may well yield a different

answer.  As such, the answer to whether Plaintiffs are entitled to the injunctive

relief they seek may vary depending on the reason for the termination.  Stated

another way, under Plaintiffs' proposed definition of Subclass A, different class

members may be entitled to a different form of injunction depending on the

reason for the termination of benefits.  Where different class members may be

-54-

entitled to a different injunction or declaratory judgment, Rule 23(b)(2) does not apply. See Dukes, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009))).  Thus, the Court is not satisfied that commonality is met for the class as proposed by Plaintiffs and exercises its discretion to modify the class definition and limit the class to individuals whose benefits were terminated on the basis of income.  See Buckhanon v. Percy, 533 F. Supp. 822, 828-29 (E.D. Wis. 1982) (redefining class to encompass only class members who received aid-reduction or termination notices brought about for the same reason).

With this modification, the Court is satisfied that Plaintiffs have identified systemic practices the legality of which can be determined on a classwide basis.  These practices include issuing income-based termination notices in which Designated Reasons do not identify income as the criteria on which the State relied, the use of notices which do not identify the individualized income information or income standard on which the ineligibility determination was based, the use of termination notices which do not identify the population group in which the individual was evaluated, and

the use of standardized fair hearing language.  While the State maintains that these practices are lawful, it does not dispute their existence.  See Answer ¶¶ 81, 83, 90.

As to the Medicaid Act claim, common questions abound.  The Court must address the threshold question of whether 42 U.S.C. § 1396a(a)(3) and its implementing regulations create private rights enforceable under § 1983.  The answer to this question is common to all class members and central to the resolution of each class member's Medicaid Act claim.  If the Court finds that a private right of action exists, then resolution of the claim will depend on whether the State's uniform practices violate the fair hearing requirements of the Medicaid Act and its implementing regulations.  More specifically, a central common question is whether notices which omit the type of information discussed above provide "a clear statement of the specific reasons supporting the intended action . . . ."  See 42 C.F.R. § 431.210(b).  The factual existence of these practices and their legal sufficiency are common questions capable of class-wide resolution.[18]

---

[18] To the extent the State argues that the wide variety of reason codes defeats commonality, the Court is not persuaded.  See Response at 18.  According to the State, "the sufficiency or insufficiency of one reason code does not demonstrate the sufficiency or insufficiency of the next reason code."  Id.  But, as stated above, the Court is not called upon to determine the sufficiency of any one reason code per se.  Rather, the Court must evaluate the sufficiency of notices which all omit the same types of information.  And having limited the class to individuals terminated on the basis of income, this evaluation will be common across the class, regardless of any variation in reason codes.

As to Plaintiffs' due process claim, the Court also finds ample common questions concerning the State's standard practices that support a finding of commonality. As set forth above, whether the notices satisfy the requirements of due process is an objective question based on the totality of the circumstances. See Jordan, 876 F.2d at 1459; see also Arrington, 438 F.3d at 1350-53. Common factual issues include what information is available to Medicaid beneficiaries through the State's statutes, regulations, websites, ACCESS account system, and other sources. This factual determination is common to all class members, regardless of whether the individual did or did not access those additional sources of information. And, whether income-based termination notices which omit the type of individualized information identified above or use Designated Reasons that do not reference income, are "reasonably calculated to apprise intended recipients, as a whole, of their

---

The State also maintains that commonality is defeated because Plaintiffs assert additional "grievances that are clearly not common to the class," such as Chianne D.'s late receipt of her termination notice, or the erroneous termination of A.V. Id. at 19-20. The Court rejects this argument as it plainly mischaracterizes Plaintiffs' claims. The fact that Plaintiffs have set forth the details of each named Plaintiff's individual experience is not an "attempt to pack into this litigation every possible grievance . . . ." See Response at 19. As discussed at length in this Order, Plaintiffs' claims are premised on their challenge to certain uniform practices—the omission of certain types of individualized information from termination notices, the reliance on Designated Reasons which do not identify any eligibility criteria, and the standardized fair hearing information. Based on these common practices, the Court finds it appropriate to certify a class as to the claims raised in Counts I and II of the Amended Complaint. Because the Court finds that class certification is appropriate as to Plaintiffs' claims rather than merely "particular issues," see Rule 23(c)(4), it is unnecessary to further "delineate the issues to be tried as class issues" as the State requests. See Response at 20.

rights," in light of the other information available to class members, is a legal question common to the entire class and independent of any individual's factual circumstances.  See Jordan, 876 F.2d at 1459.  Moreover, resolving this common question will significantly advance the litigation.  See Dozier, 2014 WL 5483008, at *22.  Additionally, whether the standard fair hearing language included in every notice combined with the other publicly available information reasonably apprises Medicaid beneficiaries of their hearing rights will not depend on any one class member's knowledge or understanding of the text, nor will it depend on whether a class member was ultimately able to request such a hearing.  Thus, this issue, too, presents a legal question capable of class wide resolution.

The State argues that "dissimilarities and case-specific variations" preclude class wide adjudication of Plaintiffs' due process claim.  See Response at 2.  According to the State, resolution of the due process claim will require the Court to analyze the "totality of circumstances" for each recipient which will "differ[] from notice to notice and person to person."  Id. at 3.  For example, the State points out that some notices contain relevant information apart from the reason code, some class members receive other written or oral communications providing additional information, and that class members are differentiated by varying degrees of actual knowledge.  Id. at 5-7.  In addition, the State notes that some individuals requested fair hearings and were

"provided with individualized information beyond that contained in the challenged notices" through the prehearing conferral process.  Id. at 6.[19]  And the State asserts that commonality is defeated where class members "received information through various channels."  See Response at 7-8.[20]  The State also maintains that Plaintiffs' proposed common questions are "bottom-line liability questions" and too abstract to drive resolution of the litigation.  Id. at 8-9.

Upon review, the State's arguments are not persuasive because Plaintiffs' challenge in this case concerns the constitutional and statutory lawfulness of certain uniform practices.  The factual variations the State identifies among the class members do not undermine the existence of the challenged practices.  And the statutory or constitutional adequacy of these uniform practices will not depend on what other written or oral

---

[19] As discussed at the December 13, 2023 Hearing, the Court will exclude from the class any individual who has already requested and received a fair hearing.  See Tr. at 144.  As to individuals who merely engaged in the prehearing conferral process, the Court does not have a sufficient factual record at this time to determine whether such individuals should be excluded from the class as well.  The Court will revisit this question prior to issuing a final ruling in this action.

[20] The State cites Pop's Pancakes, Inc. v. NuCO2, Inc., 251 F.R.D. 677 (S.D. Fla. 2008), Marko v. Benjamin & Bros., LLC, No. 617CV1725ORL41GJK, 2018 WL 3650117 (M.D. Fla. May 11, 2018), and O'Neill v. The Home Depot U.S.A., Inc., 243 F.R.D. 469 (S.D. Fla. 2006) for the proposition that "[a] plaintiff fails to establish commonality when the plaintiff alleges that an entire class received inadequate notice, but class members received information through various channels."  See Response at 19.  These consumer fraud cases do not involve constitutional due process or Medicaid benefits.  Moreover, they all include claims for damages and requests for certification under Rule 23(b)(3).  As such, the Court finds them to be inapposite to the question of commonality in this Rule 23(b)(2) case seeking prospective relief.

communications any one class member received.[21]   Rather, the constitutionality of the State's notices must be reviewed based on an objective standard in light of the other information available to class members.  See Arrington, 438 F.3d at 1349-50 (determining whether notices are adequate based on totality of information available without addressing the individual experience of any one plaintiff).  The answer to this objective question is therefore common to all members of the class under the Court's modified definition.  Cf. Amgen Inc. v. Conn. Retirement Plus & Trust Funds, 568 U.S. 455, 459 (2013) (explaining in a securities fraud case that "[b]ecause materiality is judged according to an objective standard, the materiality of [the defendant's] alleged misrepresentations and omissions is a question common to all members of the class . . . ."); see also Carriuolo, 823 F.3d at 985-86, 990 (finding class certification appropriate under the more demanding predominance requirement where liability inquiry is based on objective

---

[21] The State's argument that the notices contain other relevant information, aside from the Designated Reason, which the Court must consider in resolving the due process claim does not undermine commonality in light of the Court's more limited class definition.  See Response at 4.  The Court agrees that it must review the notices in their entirety, but the one example the State provides falls far short of showing that the variation in form language between notices is so great as to defy common analysis, especially given that the Court has limited the class to income-based terminations.  Significantly, the State does not argue that some notices do in fact contain the individualized information which Plaintiffs contend is necessary.  As such, the Court is satisfied on the current record that the termination notices are sufficiently similar as to allow review of their adequacy across the class.  Nevertheless, if the evidence adduced at trial demonstrates the existence of material differences between notices that preclude common analysis, the Court can reconsider the scope of the class or the propriety of certification at that time.  See Rule 23(c)(1)(C).

elements).  As such, the Court rejects the State's contention that it must explore what information any individual class member was able to obtain in order to resolve the systemic claims raised in this action.  See Lightfoot I, 246 F.R.D. at 336, 337 ("Plaintiffs do not need to demonstrate that particular individuals were deprived due process but rather that, as applied to the class as a whole, the [challenged law] did not afford adequate due process."); Ortiz, 616 F. Supp. at 1055.

Moreover, the factual variations on which the State relies are pertinent only to the varying degrees of harm the class members may have sustained from the alleged inadequate notices.  But, as explained above, for purposes of a Rule 23(b)(2) class, Plaintiffs need not establish that all class members are injured or aggrieved by the challenged practice.  See Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 428 (6th Cir. 2012); Coleman v. Gen. Motors Acceptance Corp., 220 F.R.D. 64, 88-90 (M.D. Tenn. 2004) (collecting cases); see also Anderson v. Garner, 22 F. Supp. 2d 1379, 1386 (N.D. Ga. 1997) ("'All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for one or more of them to seek relief under Rule 23(b)(2).'" (quoting Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978))).  Indeed, "certification of a Rule 23(b)(2) class is proper, despite the fact that not all class members may have suffered the injury posed by the class representatives, as long as the challenged policy or practice was generally

applicable to the class as a whole." <u>Coleman</u>, 220 F.R.D. at 89 (collecting cases); <u>see also</u> Newberg & Rubenstein on Class Actions § 3:20 (6th ed.) ("Because not <u>all</u> questions need be common, the fact that class members must individually demonstrate their right to recover, or that they may suffer varying degrees of injury, will not bar a finding of commonality."). Thus, while the State has identified various ways in which the factual circumstances of the class members may differ, these disparities do not preclude certification of a Rule 23(b)(2) class. <u>See</u> <u>Murray</u>, 244 F.3d at 811 ("[B]ecause the district court certified this class under Rule 23(b)(2) rather than Rule 23(b)(3), there is no requirement here that issues subject to generalized proof predominate over those subject to individualized proofs.").

### F. Typicality

The prerequisites of commonality and typicality both "focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." <u>See</u> <u>Prado-Steiman</u>, 221 F.3d at 1278. While commonality is concerned with group characteristics of a class as a whole, typicality "refers to the individual characteristics of the named plaintiff in relation to the class." <u>See</u> <u>id</u>. at 1279. Typicality is satisfied if the claims of the named plaintiffs and those of the class "arise from the same event or pattern or practice and are based on the same legal theory." <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741

F.2d 1332, 1337 (11th Cir. 1984). "The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct irrespective of whether the fact patterns that underlie each claim vary." Mesa v. Ag-Mart Produce, Inc., No. 2:07-cv-47-FtM-34DNF, 2008 WL 2790224, at *6 (M.D. Fla. July 18, 2008). The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests. Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 698 (S.D. Fla. 2004). "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class." Brown v. SCI Funeral Servs. of Fla., Inc., 212 F.R.D. 602, 604–05 (S.D. Fla. 2003) (quoting Kornberg, 741 F.2d at 1337).

Here, Plaintiffs satisfy the typicality requirement under the Court's modified class definition. They are Medicaid beneficiaries terminated on the basis of their income who received allegedly inadequate termination notices. If the uniform omission of individualized income information and the form language regarding fair hearings is unlawful as to Plaintiffs, it is unlawful as to the entire class and subclass. See A.M.C., 620 F. Supp. 3d at 734 ("[I]f the stock language in, and uniform omissions from, Plaintiffs' [Notices of Decision] were unlawful, then they were unlawful for the remainder of the class as well. Typicality is satisfied."). And if the use of broad Designated Reasons in the

notices of termination that are based on income is unlawful as to Plaintiffs, it is unlawful as to the entire Subclass.

The State's challenge to typicality is merely a repetition of the arguments they make on commonality—that different class members received different disclosures through different means, and as such, "proof of Plaintiffs' [due process] claims would not establish the claims of all class members . . . ." See Response at 10. As above, the Court is not persuaded that the differences the State identifies undermine a finding of typicality.[22]  Plaintiffs' claims and those of the class are based on the same practice—the uniform omission of certain types of information from the notices and the standard fair hearing language.  And Plaintiffs' claims and those of the class are based on the same legal theory—that these standard omissions and purported inaccuracies objectively fail to provide adequate notice within the meaning of the Due Process Clause and the Medicaid Act.  Thus, regardless of any differences in individual factual circumstances, Plaintiffs' claims are entirely typical of the claims of the class members generally.  Moreover, the Court can discern no conflict between the interests of Plaintiffs in advancing their own claims and the interests of the class.  If Plaintiffs prevail in showing that individualized

---

[22] The Court rejects the State's contention that Plaintiffs do not have standing to challenge reason codes they never received as it misapprehends the nature of Plaintiffs' claim.  Plaintiffs' challenge is not specific to the reason codes themselves, but rather the omission of certain types of information from termination notices that use these reason codes.

information is constitutionally or statutorily required to be included in the notice, or that the fair hearing language is impermissible, then Plaintiffs and the members of the proposed class will have suffered the same legal injury from the same uniform practice.  See Dozier, 2014 WL 5483008, at *25.  Notably, having limited the class to income-based terminations, the Court is satisfied that a ruling that the law does or does not require such information to be included in Plaintiffs' termination notices, and a determination that the uniform fair hearing instructions are or are not legally sufficient, will be equally applicable to all class members.

### G. Adequacy of Representation

The fourth prerequisite to class certification set forth in Rule 23(a) requires "that the representative party in a class action must adequately protect the interests of those he purports to represent." Valley Drug Co., 350 F.3d at 1189; Rule 23(a)(4) (internal quotation omitted); see also Piazza, 273 F.3d at 1346 ("'adequacy of representation' means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel").  The purpose of the "adequacy of representation" requirement is "to protect the legal rights of absent class members" who will be bound by the res judicata effect of a judgment.  Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  As such, the requirement applies to both the named plaintiffs and to

their counsel.  London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).

The "'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" Valley Drug Co., 350 F.3d at 1189 (citation omitted).   Class certification is inappropriate where some class members benefit from the same acts alleged to be harmful by other members of the class, creating a conflict of interest.  Id.  However, "the existence of minor conflicts alone will not defeat a party's claim to class certification; the conflict must be a 'fundamental' one going to the specific issues in the controversy."  Id.

Plaintiffs assert that this requirement is met because there is no conflict of interest between the named Plaintiffs and the proposed class members.  See Motion at 23.  They also assert that Plaintiffs' counsel has experience litigating Medicaid and due process claims in federal court, as well as experience with class action litigation.  Id. at 23-24.  Significantly, the State does not challenge Plaintiffs' ability to diligently prosecute this action, argue that they have any significant conflicts of interest with the proposed class members, or challenge the qualifications, experience, or competence of Plaintiffs' counsel.  Upon review of the record in this case, the Court has no reason to question the adequacy of Plaintiffs or their counsel as representatives of the class.

### H. Rule 23(b)

Finally, "a class action may be maintained if Rule 23(a) is satisfied" and the action falls within one of three types of class actions recognized in Rule 23(b).  See Rule 23(b).   Here, Plaintiffs asserts that class certification is appropriate under Rule 23(b)(2).  See Motion at 24-25.  Rule 23(b)(2) allows class certification where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."  Rule 23(b)(2).  Significantly, the Rule does not require "'that the party opposing the class . . . act directly against each member of the class.  The key is whether his actions would affect all persons similarly situated so that his acts apply generally to the whole class.'"  See Anderson v. Garner, 22 F. Supp. 2d 1379, 1386 (N.D. Ga. 1997) (alteration in original) (quoting 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil § 1775 (2d ed. 1986)).  And, as previously noted, "'[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for one or more of them to seek relief under Rule 23(b)(2).'"  Id. (quoting Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978)).

The class defined by the Court plainly satisfies this requirement and the State does not specifically challenge this prong of the class certification analysis.  In this lawsuit, Plaintiffs challenge the State's uniform practices

with regard to a subset of its termination notices.  The State does not dispute that it uses uniform fair hearing language, and that its notices do not include the type of information Plaintiffs contend is improperly omitted.  This constitutes both an act and a refusal to act on grounds applicable to the entire class.  And if the Court finds that the Constitution and/or the Medicaid Act require the State to include additional types of information in the notices, declaratory and injunctive relief would be appropriate as to the class as a whole.  Indeed, "[c]ourts 'routinely grant class action status under Rule 23(b)(2) in cases alleging systemic administrative failures of government entities.'"  See A.M.C., 620 F. Supp. 3d at 735 (quoting Vazquez Perez v. Decker, No. 18-cv-10683 (AJN), 2020 WL 7028637, at *9 (S.D.N.Y. Nov. 30, 2020)).  Accordingly, it is

     **ORDERED**:

1. Defendants' Motion to Dismiss Chianne's and C.D.'s Claims (Doc. 87) is **DENIED as moot**.

2. Plaintiffs' Amended Motion and Memorandum in Support of Class Certification (Doc. 85) is **GRANTED** to the extent the Court certifies the class defined below.  Otherwise, the Motion is **DENIED**.

3. The Court, having found that Plaintiffs have met the prerequisites to class certification set forth in Rule 23, Federal Rules of Civil Procedure,

certifies the following Class with respect to Counts I and II of the First

Amended Complaint:

> All Florida Medicaid enrollees who on or after March 31, 2023, have been or will be found ineligible for Medicaid coverage based on a finding that the individual or household has income that exceeds the threshold for Medicaid eligibility, and were issued a written notice that does not identify the individualized income used in the eligibility determination or the income standard applied.
>
> **Subclass**: Members of the class whose written notice does not provide a Designated Reason or includes only Designated Reasons that do not identify income as the factor on which the State relied in finding the individual to be ineligible for Medicaid.

4. Individuals who meet this definition but have previously requested a fair hearing and completed the fair hearing process are excluded from the Class.

5. The Court designates Plaintiffs A.V., by and through her mother and Next Friend, Jennifer V.; Kimber Taylor; and K.H., by and through his mother and Next Friend, Kimber Taylor as Class Representatives, and appoints Katy DeBriere, Miriam Harmatz, and Lynn Hearn of the Florida Health Justice Project, and Sarah Grusin, Miriam Heard, Amanda Avery, and Jane Perkins of the National Health Law Program as Class Counsel.

6. Defendants' Time-Sensitive Motion for Continuance of Trial and for Scheduling Conference (Doc. 118) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on April 23, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record