## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHIANNE D., *et al.*,

     Plaintiffs,

                                    Case No. 3:23-cv-00985-MMH-LLL

v.

JASON WEIDA, in his official capacity
as Secretary for the Florida Agency for
Health Care Administration, and
SHEVAUN HARRIS, in her official
capacity as Secretary for the Florida
Department of Children and Families,

     Defendants.

_____/

## DEFENDANTS' TRIAL BRIEF

### I.    Introduction

Plaintiffs' claims present two questions:

1. Whether, under due process, the State provides notice reasonably calculated under all the circumstances to apprise Medicaid recipients of the termination of their coverage and to afford them an opportunity to object; and

2. Whether, under federal regulations, the State's Medicaid termination notices provide recipients with a "clear statement of the specific reasons supporting the intended action," 42 C.F.R. § 431.210(b), and inform them of their "right to a fair hearing" and "the method by which [they] may obtain a hearing," *id*. § 431.206(b).

The answer to both questions is "yes."

The State's Medicaid termination notices—which DCF uses to communicate with millions of Floridians—comply with the requirements of due process and the Medicaid Act. Neither due process nor federal Medicaid regulations require termination notices to recite the individualized facts (such as the amount of income the State calculated or the income standard the State applied) that Plaintiffs contend a notice must contain. Nor does due process require notices to summarize the substance of laws that the public is presumed to know. The notices invite recipients who seek more information to call or visit DCF and enable recipients to challenge DCF's decisions. The fair-hearing language in the State's notices has always advised recipients of their hearing rights, and recent revisions to that language offer even more information. The trial in this case will therefore show that the answer to the two questions that Plaintiffs' claims ask is "yes," and that Defendants are therefore entitled to judgment in their favor on both counts of the Amended Complaint.

It is also important to recall what this case is *not* about. The merits question in this case is *not* whether DCF correctly determined any person's eligibility. That is what fair hearings are designed to address. The question is not whether the challenged notices are ideally written, whether a particular Plaintiff's notice was lost in the mail, or whether the notices comply with plain-language guidelines, which are addressed in a separate regulation that Plaintiffs do not invoke here. *See* 42 C.F.R. § 435.917(a)(1). This case does not concern notices other than termination notices (such as denial notices) or terminations from programs other than Medicaid. *See* ECF No. 122 at 40 n.13. Instead, the question is simply whether the minimum legal

thresholds that Plaintiffs sued to enforce require the State's Medicaid termination notices to include specific items of information that they do not currently include.

Finally, even if this Court ultimately finds classwide liability at trial, crafting an appropriate and permissible injunction poses additional, complex questions for this Court's resolution. This question of equitable remedies requires consideration of many practical and legal factors, such as the standing of absent class members; federalism principles; and the cost, burdens, and feasibility of the requested relief.

## II.   Legal Framework

Count I of the Amended Complaint pleads a due-process claim. Due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "Due process is a flexible concept that varies with the particular circumstances of each case, and myriad forms of notice may satisfy the *Mullane* standard." *Arrington v. Helms*, 438 F.3d 1336, 1350 (11th Cir. 2006). A notice, therefore, need not be "ideal"—only "reasonable under all the circumstances." *Id.*

Count II pleads a violation of the Medicaid Act. Specifically, Plaintiffs allege noncompliance with two CMS regulations promulgated under the Medicaid Act: 42 C.F.R. §§ 431.206 and 431.210.

The Medicaid Act requires each State's Medicaid State Plan to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim . . . is denied." 42 U.S.C. § 1396a(a)(3). CMS regulations provide that,

when a State finds a recipient ineligible and terminates coverage, it must inform the recipient "in writing" of "his or her right to a fair hearing" and "the method by which he may obtain a hearing." 42 C.F.R. § 431.206(b)(1)–(2). The State's notice must include, *inter alia*, a "statement of what action the agency . . . intends to take" and a "clear statement of the specific reasons supporting the intended action." *Id.* § 431.210(a)–(b).

Neither due process nor the Medicaid Act requires States to include in their Medicaid termination notices the following information referenced in the Court's class-certification order (ECF No. 122 at 70):

1. The applicable income limit;
2. The income amount on which DCF relied;
3. The household size;
4. The recipient's eligibility category before termination;
5. The eligibility criteria for that category;
6. The eligibility categories that DCF evaluated; and
7. A description of all eligibility categories.

## III. DCF's Notices Comply With Due Process.

When DCF terminates a recipient's Medicaid coverage, it does so in a manner that complies with the minimum requirements of due process: by providing a written notice advising that Medicaid coverage is ending, identifying a reason why, and apprising the recipient of his or her fair-hearing rights. Plaintiffs cannot carry their burden to prove that the State failed to provide notice reasonably calculated under all the circumstances to advise them of the State's action and afford them an opportunity to pursue an appeal. Defendants should therefore prevail on Count I.

Here, Defendants comfortably satisfy the due-process standard because the State's Medicaid termination notices contain enough information to put recipients on notice of the intended action and of the means to obtain more information, and allow recipients enough time to challenge that action. Due process does not require disclosure of case-specific particulars or the rules of program administration. Nor does it require disclosure of information that is contained in statutes, rules, and regulations, because the public is charged with knowledge of the law. Standardized language satisfies due process. And due process is lenient when a State provides multiple avenues to access information, such as a phone number, a website, and office locations. *Arrington*, 438 F.3d at 1351–52. DCF's notices easily satisfy the due-process standard.

    a.   <u>Standardized notices satisfy due process</u>.

First, Plaintiffs' position that due process requires notices to set forth case-specific, individualized facts is incorrect. Standard language satisfies due process. *Jordan v. Benefits Review Bd. of U.S. Dep't of Labor*, 876 F.2d 1455, 1459 (11th Cir. 1989) (approving a standardized notice of denial that checked a box indicating which eligibility criterion a claimant failed to meet and referred claimants to an enclosed guide for general eligibility information); *Adams v. Harris*, 643 F.2d 995, 997 (4th Cir. 1981) (approving notices of denial that used "stock paragraphs which provide standardized reasons for denial" and rejecting argument that due process or Social Security Act regulations required individualized facts); *Garrett v. Puett*, 707 F.2d 930, 931 (6th Cir. 1983) (holding that form notices advising individuals of

a reduction or termination of benefits were sufficient and rejecting the argument that the notices violated due process "because they did not include the mathematical calculations used . . . in arriving at the amount" of available benefits); *LeBeau v. Spirito*, 703 F.2d 639, 641, 643 (1st Cir. 1983) (denying preliminary injunctive relief in a challenge to notices the court described as "cursory in language and nearly identical"); *Gaines v. Hadi*, No. 06-60129-CIV, 2006 WL 6035742, at *14 (S.D. Fla. Jan. 30, 2006) (noting that *Jordan* found "stock paragraphs" sufficient and that *Adams* approved notices that "made no mention of the particular individual's facts and circumstances").[1] Due process simply does not require the degree of case-specific details that Plaintiffs insist be included in the State's termination notices.

In *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1289 (S.D. Fla. 2007), a retired city employee, claimed the city failed to provide notice of the "specific facts" that supported the forfeiture of his pension benefits. The court concluded that "due process does not require notice of 'specific facts,' much less a Bill of Particulars," but was satisfied because the plaintiff "was apprised of the nature of the proceedings and was in fact on enough notice to make arguments that none of the six provisions under the forfeiture statute applied to his felony conviction." *Id.* Similarly, the notices here provide more than enough information to inform recipients of the

---

[1] Plaintiffs have argued that some of these cases concerned across-the-board changes in the law and that due-process standards are relaxed in that context. But the cases themselves did not rely on that distinction—which the Eleventh Circuit has never endorsed. Nor is the argument persuasive. If Congress reduced income limits by 20 percent across the board, Plaintiffs certainly would agree that notices need not include the amount of income that DCF used to find a recipient ineligible under the new income standard—nor is it evident why a different rule would apply.

6

nature of the proceeding and to allow recipients to present their claim of eligibility.

      b.    <u>The reasonableness of notice is evaluated in totality.</u>

Second, the adequacy of notice must be evaluated in totality, and not on the basis of one reason code or even the four corners of a single document. ECF No. 122 at 60. Plaintiffs' focus on reason codes or even a single notice cannot support a due-process claim.

To satisfy due process, "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jordan*, 876 F.2d at 1459 (quoting *Mullane*, 339 U.S. at 314). Thus, in *Rosen v. Goetz*, 410 F.3d 919, 931 (6th Cir. 2005), the court evaluated Medicaid termination notices for compliance with due process and with 42 C.F.R. § 431.210. It rejected the plaintiffs' argument that a single notice must fulfill all requirements; rather, the relevant consideration was the totality of information provided. 410 F. 3d at 931 ("Due process does not require 'reasonably calculated' notice to come in just one letter, as opposed to two.").

In *Arrington*, the Eleventh Circuit confirmed that "myriad forms of notice" can satisfy due process and rejected a challenge that focused solely on the contents of a notice regarding child-support payments. 438 F.3d at 1349–51. In evaluating the notice, the court reviewed all sources of information available to the plaintiffs: the notice; court orders; a check stub advising parents of a hotline and webpage; the opportunity to speak with a child support worker; and the options to call, fax, write, email, or visit an office to obtain more information. *Id.* at 1350–51. Together

with the notice, the court held that these sources provided parents with "ample information with which to determine whether they have received their full child support payments in a timely manner" and were "reasonably calculated to inform parents" of the State's action. *Id.*; *accord Duffy v. Bates*, No. 1:15-cv-00037, 2015 WL 1346196 (N.D. Fla. Mar. 24, 2015) (finding no due-process violation where notice did not advise plaintiff why she was barred from Veterans Administration property but provided a phone number at which the plaintiff could obtain that information).

An objective standard determines whether notice is reasonable. In *Jordan*, the Eleventh Circuit made clear that the "question is not whether a particular individual failed to understand the notice but whether the notice is reasonably calculated to apprise intended recipients, *as a whole*, of their rights." 876 F.2d at 1459 (emphasis supplied); *accord Arrington*, 438 F.3d at 1352 ("[T]he sophistication of the affected individuals and the health and safety implications of the deprivation, standing alone, are not sufficient to impose an affirmative notice obligation on government officials." (quoting *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999)) (cleaned up)); *Coleman v. Dir.*, *OWCP*, 345 F.3d 861, 865 (11th Cir. 2003) (quoting *Jordan*'s recital of the objective *Mullane* standard). Plaintiffs' confusion or inability to understand their notices is not relevant under an objective standard.

The trial in this case will show that DCF's communications with a Medicaid recipient are not limited to a single notice or reason code and that the frequency and substance of communications surrounding termination of Medicaid benefits differs widely from person to person. Indeed, the frequency and substance of the

8

oral and written communications between DCF and Plaintiffs (and class member Lily Mezquita) varied significantly. For example, some had numerous phone calls with DCF, while others did not; some requested fair hearings, while others did not.

In addition to each recipient's personalized interactions with DCF, DCF will show that substantial publicly available information exists online to apprise individuals of relevant rights and responsibilities, and to guide individuals to resources and assistance. The notice and process available to Medicaid recipients here are no less robust than those the Eleventh Circuit approved in *Arrington*.

      c.    <u>Class members have a burden to inquire and inform themselves, and actual knowledge defeats a due process claim.</u>

The law assumes that recipients will diligently seek information and charges them with knowledge of the facts that diligent inquiry would develop. The "entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." *Atkins v. Parker*, 472 U.S. 115, 131 (1985). DCF's notices are more than sufficient to "prompt an appropriate inquiry if . . . not fully understood" and thus comply with due process. *Id.*

Plaintiffs and other class members have an obligation to inform themselves using the information that DCF makes available, and no due-process claim can lie when diligence is not exercised. The Supreme Court has recognized that publicly available information can apprise individuals of their rights, *City of West Covina v. Perkins*, 525 U.S. 234, 240–42 (1999), and the Eleventh Circuit has charged indi-

vidual recipients with a burden of inquiry, *Jordan*, 876 F.2d at 1460 (finding that a plaintiff "who asserts a special problem of comprehension must take the next step to inquire," and refusing to reopen a claim for benefits on due-process grounds when the plaintiff "made no effort to inquire or otherwise make known his difficulty"). *Jordan* in turn cited *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983), which held that "placing a burden of diligence and further inquiry on the part of a non-English-speaking individual served in this country with a notice in English does not violate any principle of due process." Similarly, in *In re Alton*, 837 F.2d 457, 460–61 (11th Cir. 1988), the court found no due-process violation where the creditor, though notified of a bankruptcy proceeding, was not notified of the deadline to file a complaint to prevent the discharge of a debt. The court explained that, if the plaintiff "had made a minimal effort . . . , he would have realized the outside dates for the filing of his complaint." *Id.* at 461. The plaintiff "made no such effort and cannot now properly complain of the consequences of his inaction." *Id.*; *see also In re Le Ctr. on Fourth, LLC*, No. 19-cv-62199, 2020 WL 12604348, at *3 (S.D. Fla. June 30, 2020), *aff'd*, 17 F.4th 1326 (11th Cir. 2021) ("Once served, the creditor is the one under a duty to inquire; no due process violation exists where the creditor could have protected himself and failed to do so." (emphasis omitted)).

Accordingly, "notice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." *Soberal-Perez*, 717 F.2d at 43 (quoting *Commonwealth v. Olivo*, 337 N.E.2d 904, 909 (Mass. 1975)) (internal marks omit-

ted).

On the other side of the coin, an individual's *actual knowledge* of his or her rights also defeats any due-process claim, which precludes relief for Plaintiffs and other class members who understood why their Medicaid coverage was terminated and knew that a fair hearing was available. *See Jordan*, 876 F.2d at 1460 (noting recipient's actual knowledge of, and participation in, administrative procedures for seeking benefits, and finding no due-process violation). Thus, when an individual has actual knowledge of his or her right to a fair hearing, no due-process claim can lie. *Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 436 (2d Cir. 2011) ("Process is not an end in itself, and due process is not offended by requiring a person with actual, timely knowledge of an event that may affect [the person's] right to exercise due diligence and take necessary steps to preserve that right." (internal marks and citations omitted)); *see also Moreau v. FERC*, 982 F.2d 556, 569 (D.C. Cir. 1993) ("[T]he Due Process Clause does not require notice where those claiming an entitlement to notice already knew the matters of which they might be notified."); *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1508 (9th Cir. 1990) ("Actual knowledge of the pendency of an action removes any due process concerns about notice of the litigation."); *Kalme v. W. Va. Bd. of Regents*, 539 F.2d 1346, 1349 (4th Cir. 1976) ("Although the letter did not inform Kalme of his right to demand a hearing, this oversight was not prejudicial, for he already knew of this right and immediately exercised it.").

The challenged notices provided class members with enough information to

protect their rights, and their questions could be answered through reasonably diligent inquiry. Indeed, some class members took immediate advantage of this available information. Chianne D.'s inquiries to DCF resulted in her learning the precise income amount that DCF used to determine that she and C.D. were ineligible for Medicaid. DCF's call center advised Lily Mezquita that she was determined to be ineligible for Medicaid because of income, told her the income limits DCF applied, and provided the exact amount of income that DCF used to determine her eligibility. Ms. Mezquita did not, however, read her notice (including its fair-hearing language) before her deposition in this case, and both Kimber Taylor and A.V.'s mother made little effort to contact DCF despite actual knowledge of the various ways to do so.

The evidence will show that many thousands of individuals have requested fair hearings related to Medicaid ineligibility since April 2023. These individuals and others with similar, actual knowledge of their rights have no cognizable claim. Chianne D. knew the basis of DCF's termination of her benefits and availed herself of the opportunity to contest DCF's determination through the fair-hearing process. Ms. Mezquita requested a fair hearing, and her benefits were later restored as a result of subsequent communications with DCF. A.V.'s mother knew that a fair hearing was available, but simply wanted to litigate this class action instead. These individuals' due-process claims—and those of all similar class members—must fail. Once again, highly individualized circumstances that vary from one recipient to the next preclude a finding that DCF's notices violate due process on a classwide basis.

Plaintiffs cannot show whether class members had knowledge of their rights or exercised appropriate diligence. Just as classwide relief cannot be based on the subjective confusion, it cannot issue in favor of those who have actual knowledge of their rights or failed to make diligent inquiry.

> d.   Recipients are charged with knowledge of the law and other publicly available sources of information.

Since the public at large is presumed to know the law, *Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law."), due process does not require States to provide notice of the law. Medicaid recipients—including class members—are therefore charged with knowledge not only of DCF's fair-hearing procedures, but also Medicaid eligibility requirements (including income standards) codified in state and federal statutes and regulations.

In *City of West Covina v. Perkins*, 525 U.S. 234 (1999), the Court held that due process does not require States to provide notice of administrative procedures set forth in laws and other available sources. When remedies "are established by published, generally available statutes and case law," due process is satisfied. *Id.* at 241. The Court found that a person whose property had been seized was not entitled to personal notice of hearing rights: "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The [State] need not take other steps to inform him of his options." *Id.* at 241.[2] And in *Arrington*, the Eleventh Circuit found

---

[2] *Memphis Light, Gas, and Water Division v. Craft*, 436 U.S. 1 (1978), is inapposite for the reasons explained in *West Covina* and *Arrington*. In *Memphis*

due process did not require personal notice of hearing rights where the State's "statutes, regulations, and publicly available agency manuals provide custodial parents notice of their right to a hearing and the procedures for obtaining one." 438 F.3d at 1351–52; *accord Reams v. Irvin*, 561 F.3d 1258, 1265 (11th Cir. 2009).

In addition to statutes, rules, regulations, and judicial precedent, the public is also charged with knowledge of information contained in published, generally available sources of information, such as "agency policy manuals." *Arrington*, 438 F.3d at 1353; *see also Grayden v. Rhodes*, 345 F.3d 1225, 1241–42 (11th Cir. 2003).

Here, the published, generally available sources of information available to Plaintiffs and other class members include (in addition to federal law) the Florida Statutes, the Florida Administrative Code, DCF's website and call center, and each recipient's secure online MyACCESS accounts. Fair-hearing rights are set forth in detail in DCF's rules, *see* Fla. Admin. Code r. 65-2.042–.066, 65A-1.204, and on its website and other sources. So are Medicaid eligibility requirements. *See* 42 U.S.C. § 1396a(a)(10); Fla. Stat. §§ 409.903–.904; Fla. Admin. Code r. 65A-1.701–.716. DCF's ESS Program Policy Manual—an agency policy manual available on DCF's website—provides extensive information about Medicaid eligibility rules and calculations. Medicaid income limits can be found in sections 409.903 and 409.904 of the Florida Statutes and rules 65A-1.707, 65A-1.713, and 65A-1.716 of the Florida Administrative Code, as well as Appendix A-7 to the ESS Program Policy Manual.

---

*Light*, hearing rights were not set forth in statutes and regulations, since publicly available documents did not describe the administrative procedures of the municipal utility at issue there. See Arrington, 438 F.4d at 1352 n.16.

Florida does not violate due process by omitting from its notices information that is contained in state or federal law or in publicly available sources. *See Atkins*, 472 U.S. at 130–31 (concluding that personal notice of statutory change to benefits was unnecessary because individuals are charged with knowledge of the law); *Cole v. R.R. Ret. Bd.*, 289 F.2d 65, 68 (8th Cir. 1961) (concluding, for the same reason, that personal notice of statutory expansion of eligibility requirements was unnecessary). To the extent the information that Plaintiffs claim was omitted from DCF's notices is available through these alternative sources, due process does not compel their inclusion in written notices.

## IV.   DCF's Notices Comply with the Medicaid Act Regulations.

### a.   The Medicaid Act provision that Plaintiffs sue to enforce, 42 U.S.C. § 1396a(a)(3), is not enforceable under section 1983.

42 U.S.C. § 1396a(a)(3) does not confer enforceable rights, and certainly not the specific rights that Plaintiffs claim.

Only statutes that confer federal rights are enforceable under section 1983. *Bowles v. DeSantis*, 934 F.3d 1230, 1239 (11th Cir. 2019). To determine whether a statute confers a federal right, courts first "identify exactly what rights, *considered in their most concrete, specific form*, plaintiff is asserting." *Id.* (quoting *Burban v. City of Neptune Beach*, 920 F.3d 1274, 1278 (11th Cir. 2019)) (emphasis supplied).

Once it identifies the precise right that the plaintiff asserts, courts determine whether Congress "intended that the provision in question benefit the plaintiff." *Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (2018)). The rules that govern this inquiry are identical to those that determine whether Congress has conferred

an implied private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285–86 (2002).

Viewed in their most concrete, specific form, the right that Plaintiffs claim is a right to written notice of specific items of information, such as the amount of income that DCF used to determine their eligibility and the income limits that DCF applied. In enacting 42 U.S.C. § 1396a(a)(3), Congress did not unambiguously create these rights. The statute does not mention these rights or even mention notice.

The statute, moreover, does not contain the rights-creating language needed to confer a federal right. 42 U.S.C. § 1396a(a) lists 86 items that a State's Medicaid State Plan must contain. 42 U.S.C. § 1396a(b) then directs the Secretary of Health and Human Services to approve Medicaid State Plans that fulfill the conditions specified in subsection (a). Next, Congress granted the Secretary express authority to enforce compliance with 42 U.S.C. § 1396a and with the Medicaid State Plans the Secretary has approved. *See* 42 U.S.C. § 1396c; 42 C.F.R. § 430.35. Rather than confer enforceable federal rights on Plaintiffs, the statute is phrased as a directive to the Secretary of Health and Human Services. *See California v. Sierra Club*, 451 U.S. 287, 294 (1981) ("The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries.").

*Armstrong v. Exceptional Child Center*, *Inc.*, 575 U.S. 320, 331–32 (2015), is an instructive analogy. There, Medicaid providers claimed that Congress granted them a private right of action to enforce 42 U.S.C. § 1396a(a)(30), which requires Medicaid State Plans to establish procedures for determining minimum provider

16

reimbursement rates. The Court disagreed for two reasons. First, citing 42 U.S.C. § 1396a(b), it explained that the statute is "phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid." *Id.* at 331. Second, it explained that Congress "explicitly conferred means of enforcing compliance" on the Secretary, which "suggests that other means of enforcement are precluded." *Id.* at 331–32; *see also Planned Parenthood of Greater Texas Fam. Plan. & Prev. Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 359–60 (5th Cir. 2020) (en banc) (holding that 42 U.S.C. § 1396a(a)(23) is not privately enforceable).

The same rationale applies here. Like the provision at issue in *Armstrong*, the provision that Plaintiffs seek to enforce is part of a framework that establishes conditions for the Secretary's review of Medicaid State Plans. Both provisions are directives to the Secretary and are enforceable by the Secretary. Accordingly, the statute that Plaintiffs invoke does not confer rights enforceable under section 1983.

> b.   The Medicaid regulations Plaintiffs sue to enforce are not actionable under section 1983.

Even if 42 U.S.C. § 1396a(a)(3) is privately enforceable under section 1983, the regulations on which Plaintiffs rely to support their Medicaid Act claim are not. 42 C.F.R. §§ 431.206 and 431.210 impose new and distinct obligations not found in the Medicaid Act, which merely requires States to grant "an opportunity for a fair hearing before the State agency" that terminated the claim for benefits. 42 U.S.C. § 1396a(a)(3).

Agency regulations are not automatically actionable under section 1983, but only when the regulation "merely fleshes out the content" of a right conferred by statute. *Kissimmee River Valley Sportsman Ass'n v. City of Lakeland*, 250 F.3d 1324, 1326–27 (11th Cir. 2001). A regulation that "imposes new and distinct obligations not found in the statute itself . . . is too far removed from the Congressional intent to constitute a federal right enforceable under § 1983." *Id.* (internal marks omitted).

The Eleventh Circuit interprets this rule strictly. Congressional intent is the polestar: to find a regulation privately enforceable, "courts must find that Congress has *unambiguously* conferred federal rights on the plaintiff." *Harris v. James*, 127 F.3d 993, 1010 (11th Cir. 1997) (emphasis in original). When a statute does not dictate the "substance" of a written notice, for example, but merely requires that a decision be in writing, a regulation that dictates the substance of the written decision is not actionable under section 1983. *Yarborough v. Decatur Hous. Auth.*, 931 F.3d 1322, 1325–27 (11th Cir. 2019) (en banc). Similarly, while Congress required States to provide Medicaid services with reasonable promptness, a CMS regulation that required States to provide transportation to recipients who could not otherwise access services was not enforceable under section 1983. *Harris*, 127 F.3d at 1010–12. The court explained that "transportation may be a reasonable means of ensuring" that services are provided promptly, and that this nexus might sustain the validity of the regulation, but it did not "support a conclusion that Congress has unambiguously conferred upon Medicaid recipients a federal right to transportation." *Id.* at

18

1012.

Here, the Medicaid Act does not explicitly require written notice, much less specify discrete items of information that must be set forth in a notice. In enacting the Medicaid Act, Congress did not unambiguously confer a federal right to written notice of the amount of income that DCF attributed to the recipient, or the income limit that DCF applied to the recipient, or the Medicaid eligibility category to which the recipient belonged before termination. A right to personal, written notice is not necessarily implied in the opportunity for a hearing that 42 U.S.C. § 1396a(a)(3) secures. *See City of West Covina*, 525 U.S. at 241 (concluding that due process does not require personal, written notice of the right to an administrative hearing). Indeed, even CMS did not unambiguously confer a right to personal, written notice of the elements of information that Plaintiffs claim DCF's notices must include. At most, Plaintiffs *infer* a right to that information from the regulation that mandates disclosure of the "specific reasons" for the intended action. 42 C.F.R. § 431.210(b).

Congress did not unambiguously confer rights that neither the Medicaid Act nor its regulations mention, and that Plaintiffs only glean from the regulations by stacking inference upon inference: *first* inferring a right to notice from the statute, and *then* inferring a right to specific items of information from CMS's regulations.

As in *Harris* and *Yarborough*, the Medicaid Act says nothing about notices, let alone the content of notices. 42 U.S.C. § 1396a(a)(3) requires States to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied." No federal

statute requires States to issue notices containing the specific items of information. These are distinct obligations—not rights "unambiguously conferred" by Congress.

The regulations on which Plaintiffs rely are too far removed from congressional intent to constitute an enforceable federal right. A contrary finding would mean that DCF has complied with Congress's mandate by apprising recipients of their right to a fair hearing, but is exposed to liability for not checking boxes found nowhere in the statute. *See Yarborough*, 931 F.3d at 1326 ("Ms. Yarborough's case was not a challenge to the Authority's failure to provide a written decision. . . . [T]he hearing officer violated the regulation but not the statute. Her case fails as a result."). Like the Eleventh Circuit in *Harris* and *Yarborough*, this Court should reject that result.

     c.     <u>The Medicaid regulations require DCF to state the reason for termination but not the individualized facts that support that determination.</u>

Medicaid regulations require States that terminate a recipient's eligibility to disclose the "action the agency . . . intends to take" and provide a "clear statement of the specific reasons supporting the intended action." 42 C.F.R. § 431.201(a)–(b). For example, the "specific reason" for a recipient's termination might be that the individual's income exceeded applicable limits. The regulation does not, however, require DCF to recite individualized facts that support its termination decision or to provide an explanation of how DCF applied eligibility standards to those facts. CMS could have written a regulation that requires these disclosures—but it did not.

DCF's notices comply with the regulation. When it terminates a recipient's

Medicaid coverage because of the recipient's income, DCF enrolls the recipient in the Medically Needy Program. *See* Fla. Stat. § 409.904(2). The notices that alert recipients to their Medicaid termination and enrollment in the Medically Needy program inform recipients of the following:

> We have reviewed your eligibility for full Medicaid benefits and have determined you are not eligible because your income exceeds the limit for Medicaid.

In addition, in explaining the Medically Needy Program, the notice says:

> Individuals enrolled in the Medically Needy Program have income or assets that exceed the limits for regular Medicaid.[3]

These statements explain why the recipient was terminated from Medicaid and enrolled in the Medically Needy Program instead.

Nothing in the plain language of the Medicaid regulations requires States to inform recipients of the individualized facts that the State relied on in reaching its decision, in addition to the reason behind its decision. Thus, in *Adams*, the court held that a regulation requiring notice of the "specific reasons" that support a finding of non-disability did not require the Social Security Administration to disclose case-specific facts. 643 F.2d at 999. DCF's notices satisfy the regulatory requirement by identifying excess income as the reason supporting Medicaid termination.

The distinction between the *reason* for an action and the *facts* that support that action is found in other areas of the law as well. CMS's own regulations make

---

[3] DCF's "Medically Needy Brochure," which is available on DCF's website, also informs the public that the Medically Needy Program serves those who would otherwise qualify for Medicaid, but for their income.

that distinction in the context of certain Medicare provider appeals. *See* 42 C.F.R. § 405.1836(d) ("The notice must include a detailed explanation of the *reasons* for the decision . . . and the *facts* underlying the decision." (emphasis added)). Federal Rule of Civil Procedure 26(a)(2)(B) likewise requires parties to disclose an expert's opinions and the "reasons for them"—*in addition to* "the facts or data considered by the witness." The rule thus treats the reasons for an expert's opinions as distinct from the facts considered in forming the expert's opinion—just as DCF's action and reason for the action are distinct from the facts that DCF considered in making its decision.

Nor do the regulations require States to disclose all eligibility requirements in their termination notices. The regulations' omission of eligibility requirements from the items of information that notices must contain makes sense because, as discussed above, Medicaid recipients are charged with knowledge of federal and state law. Medicaid eligibility requirements appear in federal and state law. *See* 42 U.S.C. § 1396a(a)(10); Fla. Stat. §§ 409.903–.904; Fla. Admin. Code r. 65A-1.701– .716. Moreover, a separate federal regulation requires States to disclose Medicaid eligibility requirements *only upon request.* 42 C.F.R § 435.905(a)(1). Clearly, CMS knows how to direct States to disclose Medicaid eligibility requirements—and it did not do so here. Its omission from one regulation of a requirement that appears in another regulation is presumed to be intentional. *Yonek v. Shinseki*, 722 F.3d 1355, 1359 (Fed. Cir. 2013) ("Where an agency includes particular language in one sec- tion of a regulation but omits it in another, it is generally presumed that the agency

acts intentionally and purposely in the disparate inclusion or exclusion." (internal marks omitted)); *accord Newman v. FERC*, 27 F.4th 690, 698 (D.C. Cir. 2022).

Similarly, it makes little sense to require States to disclose in their Medicaid termination notices the eligibility categories for which a Medicaid recipient was evaluated. Federal law requires States to evaluate *every* individual for *every* eligibility category. *See* 42 C.F.R. § 435.916(f)(1) ("Prior to making a determination of ineligibility, the agency must consider all bases of eligibility . . . ."). A standard statement in each notice that DCF considered all bases of eligibility is not required by the regulations and does not provide essential, useful information to recipients.

Requiring termination notices to include eligibility requirements would also exponentially increase the length of the notices—which Plaintiffs already criticize for their length—and would merely reiterate the contents of publicly available laws and regulations. Plaintiffs cannot show how it is possible to provide a complete and accurate summary of all Medicaid eligibility categories and requirements within the confines of a single notice. Generalizations about eligibility requirements, like those Plaintiffs previously offered, *see* ECF No. 69 at 7 (suggesting in a sample notice that all children and all seniors are eligible for Medicaid), will be misleading. Federal regulations do not obligate DCF to provide overly simplified statements of eligibility categories and requirements in their notices, or to provide notices long enough to accurately delineate all Medicaid eligibility categories and requirements.

It is not enough for Plaintiffs to demonstrate at trial that DCF's notices could be improved, or that additional information might be useful to recipients. Plaintiffs

cannot show that the Medicaid Act regulations they sued to enforce require States to include more than what they already include: a statement that benefits will end, the reason why, and an avenue to pursue an administrative appeal of that decision.

       e.     <u>DCF's Fair-Hearing Language and Hearing Procedures Exceed Legal Requirements.</u>

DCF's notices plainly advise recipients of their right to a fair hearing. Before October 2023, the termination notices contained the following standard language:

> **Fair Hearings:** If you disagree with the decision we have made, you have the right to ask for a hearing before a state hearings officer. You may be represented at the hearing by a lawyer, relative, friend, or anyone you choose. If you want a hearing you must ask for the hearing you must ask for the hearing by writing, calling the call center or coming into an office within 90 days from the date at the top of this notice. If you ask for a hearing before the effective date of this notice, your benefits may continue at the prior level until the hearing decision. You will be responsible to repay any benefits if the hearing decision is not in your favor.

This language advised recipients of their right to a hearing, methods for requesting a hearing, the deadline to request a hearing, and the uninterrupted continuance of benefits pending a hearing if the request is made before the action's effective date. The fair-hearing language is followed by a phone number for the DCF call center, a link to information about free legal services, and links to two DCF websites to find additional information. The text immediately preceding the fair-hearing language directs recipients to their secure online accounts and provides a call-center phone number. The header on the first page of the notice identifies DCF's post office box, which receives and processes fair-hearing requests, and the notice further provides a link to DCF's office locations, where fair-hearing requests can be made in person.

In October 2023, DCF changed the word "will" to "may" in the last sentence of the fair-hearing language, so that it reads as follows: "You <u>may</u> be responsible to repay any benefits if the hearing decision is not in your favor." (emphasis added).

In April 2024, DCF again revised the fair-hearing language to include even more information. The revision added an email address and web address at which recipients can submit hearing requests, the mailing address of the Appeal Hearings Section (in addition to the post office box on the first page), an explanation of DCF policy regarding the repayment of benefits if the recipient does not prevail, and bolding and underlining to make the purpose of the paragraph unmistakably clear:

> **Fair Hearings: <u>If you disagree with our decision,</u>** you have the right to ask for a hearing before a state hearing officer. You may be represented at the hearing by a lawyer, relative, friend, or anyone you choose. If you want a hearing, you must ask for the hearing within 90 days from the date at the top of this notice. You may ask for a hearing by emailing us at <u>appeal.hearings@myflfamilies.com</u>; by making a request online at <u>https://www.myflfamilies.com/fairhearings</u>; by writing to us at Appeal Hearings Section, 2415 North Monroe Street, Suite 400-I, Tallahassee, Florida 32303-4190; by calling the call center; or by coming into a DCF office. If you ask for a hearing before the date your benefits are scheduled to end or change, your Medicaid benefits will continue at the prior level until the hearing decision. You may be responsible to pay any benefits if the hearing decision is not in your favor. For Medicaid, you will not be responsible to repay benefits unless we find that you engaged in fraud or an intentional program violation. Your appeal will be decided within 90 days of your request. For Medicaid, if you have an urgent health care need (one that would result in serious harm to your health if not treated soon), you can ask for a faster appeal. Proof of your urgent health care need may be requested.

From day one, DCF's fair-hearing language has clearly informed recipients of their entitlement to a hearing to contest DCF's decision and of multiple, easy

means by which recipients can request fair hearings. Thousands of recipients have taken advantage of the fair-hearing process, including two who will testify at trial. DCF's recent additions to the fair-hearing language provide even more information and only confirm the notice's compliance with the regulations on which Plaintiffs rely.

## V.   Plaintiffs and Many Class Members Lack Standing.

   d.   <u>Chianne D. and C.D. do not have justiciable claims.</u>

C.D. lacks standing, and Chianne's claim is moot, because neither C.D. nor Chianne is a Medicaid recipient or claims to be eligible for Medicaid. Any threat of injury they claim to face from Medicaid notices is consequently purely hypothetical and speculative and is not a cognizable, redressable injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).[4] Chianne, moreover, requested a fair hearing but then withdrew her request; any injury that she and C.D. suffered is traceable not to DCF, but to Chianne's voluntary decision to forego the fair hearing she requested.[5]

---

[4] Alleged injuries such as "stress and anxiety" do not establish Plaintiffs' standing here. *See* ECF No. 122 at 18, 34. Under Article III, only the "invasion of a legally protected interest"—not any harm—confers standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178, 1182 (11th Cir. 1993); *accord Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005). "The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000). Freedom from stress and anxiety is not the interest that due process and the Medicaid Act protect.

[5] Resolving the standing of the named Plaintiffs is necessary here because of the nature of the relief sought. Plaintiffs seek person-specific relief, such as corrective notices and their reinstatement to Medicaid coverage. *See* ECF No. 69 at 2–6.

e.   <u>Class members lack standing.</u>

Before it may grant relief to members of a class or subclass certified under Rule 23(b)(2), a court must determine which class or subclass members suffered injury and have standing to seek relief. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (applying Article III principles to a Rule 23(b)(3) class). Plaintiffs cannot establish which class and subclass members were injured (and are therefore entitled to prospective relief) and which had actual knowledge or access to alternative sources of information, such as the call center and state offices. The omission of particular items of information from the challenged notices might have made no difference to many class members, who would have derived no benefit from the addition of that information. Absent some injury resulting from the omission of information from their notices, class members suffered a bare procedural violation, which is insufficient to confer Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016); *see also Doe v. Univ. of Mich*, 78 F.4th 929, 944 (6th Cir. 2023) ("The deprivation of process alone, without some concrete harm flowing from that deprivation, cannot constitute an injury that conveys standing.").

Class members who have no basis to contest DCF's decision lack standing to challenge the sufficiency of DCF's termination notices. *See Rector v. City & Cnty. of Denver,* 348 F.3d 935, 943–44 (10th Cir. 2003). The Eleventh Circuit recently

---

Plaintiffs do not seek only indivisible relief—such as the removal of a monument, *see Glassroth v. Moore*, 335 F.3d 1282, 1293 (11th Cir. 2003)—that would be the same no matter how many plaintiffs have standing. Because Plaintiffs seek person-specific relief, this Court should assess whether each named Plaintiffs has standing to seek that relief.

affirmed that, to establish standing to seek relief from the violation of a procedural right, a litigant must prove that "there is *some possibility* that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, --- F.4th ----, No. 22-11079, 2024 WL 1918733, at *4 (11th Cir. May 2, 2024) (quoting *Cahaba Riverkeeper v. EPA*, 938 F.3d 1157, 1162 (11th Cir. 2019)) (emphasis in *Center for a Sustainable Coast*). A recipient who asserts no grounds to challenge DCF's eligibility determination was not harmed by the allegedly insufficient notice.

## VI.    Plaintiffs Seek Overly Broad Injunctive Relief.

At trial, Defendants will offer evidence relevant to the appropriate scope and character of any prospective injunctive relief.[6] This evidence will address the costs, burdens, and feasibility of the changes that Plaintiffs seek, including the compatibility of those changes with the technical limitations of the ACCESS Florida System and the ongoing ACCESS Modernization Project and the cost of reinstating Medicaid coverage for hundreds of thousands of people who have been found ineligible.

Several legal principles bear on the appropriate scope of injunctive relief as well. First, the Court should first confirm that Plaintiffs have satisfied each of the four injunction factors. In addition to establishing success on the merits, Plaintiffs must show that (1) class or subclass members will suffer irreparable injury unless a

---

[6] To the extent Plaintiffs seek retrospective relief, such as relief from medical expenses incurred while ineligible for Medicaid, Defendants object that Plaintiffs requested only prospective relief in their complaint, and retrospective relief would offend the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

classwide injunction issues; (2) any threatened injury to class or subclass members outweighs any damage the proposed classwide injunction may cause Defendants; and (3) the proposed classwide injunction would not be adverse to the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). The public, of course, has a significant interest in the efficient allocation of the government's fiscal resources and in minimizing unnecessary cost. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017); *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1474 (8th Cir. 1994). And once a State elects to participate in Medicaid, it must comply with all federal statutory and regulatory requirements. ECF No. 122 at 3. This means that, except to the extent federal law permits a State to maintain or reinstate the Medicaid services of recipients who have been found ineligible, *see* 42 C.F.R. §§ 431.230, 431.231, the State *must* enforce its eligibility requirements and *may not* provide Medicaid services to recipients who have been determined to be ineligible, *see* 42 U.S.C. § 1396c; 42 C.F.R. §§ 430.35, 435.930(b).

This Court should also consider whether the requested relief—including the reinstatement of recipients who have been found ineligible—comports with principles of comity and federalism. *See Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Any injunction must be narrowly tailored to proven legal violations, restrain no more conduct than is reasonably necessary, and intrude into state affairs no more than is absolutely necessary. *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F4th 1267, 1280 (11th Cir. 2021); *Morrow v. Harwell*, 768 F.2d 619, 628 (5th Cir. 1985). An injunction against the State should represent the least intrusive, expensive, and

burdensome means of redressing any proven violation. *Morrow*, 768 F.2d at 628.

Finally, 42 C.F.R. § 431.231(c) prescribes the conditions of reinstatement of Medicaid benefits in cases of inadequate notice. The prospective reinstatement of Medicaid recipients who were terminated because of their income would be inconsistent with this regulation, which permits reinstatement only after the recipient requests a fair hearing and only if the termination "resulted from other than the application of Federal or State law or policy." An injunction that orders prospective reinstatement of class or subclass members here, including ineligible individuals, to remedy an allegedly inadequate notice would be inconsistent with the specific regulation that governs the reinstatement of benefits and is therefore unwarranted.

Dated May 7, 2024.                    Respectfully submitted,


/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
James Timothy Moore, Jr. (FBN 70023)
Ashley H. Lukis (FBN 106391)
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: 850-577-9090
andy.bardos@gray-robinson.com
tim.moore@gray-robinson.com
ashley.lukis@gray-robinson.com
*Attorneys for Defendants*